Addison Gilbert Hospital & others[1] vs. Rate Setting Commission & others.[2]

Suffolk. March 11, 1983. — August 23, 1983.

Present: Hennessey, C.J., Wilkins, Liacos, Abrams, & O'Connor, JJ.

*Rate Setting Commission. Hospital,* Medicaid reimbursement. *Medicaid. Words,* "Inpatient hospital services."

A regulation of the Rate Setting Commission fixing a rate at which hospitals were to be reimbursed under the Medicaid program for days of hospitalization of patients awaiting transfer to lower-level care facilities ("administratively necessary days") was a regulation which established rates for "inpatient hospital services" under 42 U.S.C. § 1396a (a) (13) (D) (1976), and, consequently, was invalid for lack of approval by the United States Secretary of Health and Human Services. [20-24]

This court expressed the view that certain hospitals participating in the Medicaid program were entitled to bring an action against the Rate Setting Commission and the Department of Public Welfare alleging damages on contract grounds and challenging the regularity of procedures by which the Rate Setting Commission had adopted a regulation fixing a rate at which the hospitals were to be reimbursed for care of patients awaiting transfer to lower-level care facilities. [24-26]

Civil actions commenced in the Superior Court Department on March 12, 1981, and April 7, 1981, respectively.

[1] The plaintiffs are Addison Gilbert Hospital and twenty-four other hospitals located throughout the Commonwealth.

[2] The defendants are the Chairman of the Rate Setting Commission, the Rate Setting Commission, the Commissioner of Public Welfare, the Department of Public Welfare, and the Commonwealth of Massachusetts. The case was consolidated with Cape Cod Hospital *vs.* Rate Setting Commission & others, comprising the same defendants as those in the original action. The report from another case below, brought by Holyoke Hospital, has not been entered in this court.

A consolidated order for partial summary judgment was reported to the Appeals Court by *Jacobs,* J. The Supreme Judicial Court granted a request for direct review.

*William L. Pardee,* Assistant Attorney General, for the defendants.

*Mitchell H. Kaplan (Mark A. Borreliz & James H. Wexler* with him) for the plaintiffs.

ABRAMS, J. The plaintiffs, twenty-six nonprofit hospitals located throughout the Commonwealth, brought this action to challenge the validity of a regulation promulgated by the Rate Setting Commission. 114.1 Code Mass. Regs. § 3.06 (1981). The contested regulation establishes a fixed reimbursement rate for each "administratively necessary day," see note 6, *infra,* spent by a Medicaid patient in a hospital in the Commonwealth. A Superior Court judge entered partial summary judgment for the hospitals on the issue of liability. The judge concluded that the regulation was invalid from February 1, 1981, its effective date, to August 13, 1981, when it was superseded by Federal law. See Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, § 2173, 95 Stat. 357, 808 (1981).[3] At the defendants' request the judge reported his interlocutory order to the Appeals Court. We allowed the defendants' application for direct appellate review, and we affirm.

We summarize the statutory framework within which the challenged regulation was enacted. The Medicaid program provides Federal medical assistance to participating States. 42 U.S.C. §§ 1396 et seq. (1976 & Supp. III 1979). At the Federal level, the program is administered through the Department of Health and Human Services. Massachusetts participates in the program, G. L. c. 118E, having designated the Department of Public Welfare (department) to ensure that the program is administered in accordance with Federal law. See G. L. c. 118E, §§ 4, 6. Under the Mas-

---

[3] Unless otherwise indicated, references to Federal Medicaid law, 42 U.S.C. §§ 1396 et seq. (1976 & Supp. III 1979), title XIX of the Social Security Act, and to the regulations passed pursuant to it, will be to provisions as they existed prior to the 1981 amendments.

sachusetts regulatory structure, the Rate Setting Commission establishes rates for payment to Medicaid providers, which include hospitals. G. L. c. 6A, § 32.

As part of a State's participation in the Medicaid program, it must adopt a "State plan," which must comply with Federal law and which must be approved by the Secretary of Health and Human Services. 42 U.S.C. § 1396a(b) (1976 & Supp. III 1979). As part of its plan, the State must establish rates for "inpatient hospital services." These rates, unlike other portions of the plan, must receive the approval of the Secretary of Health and Human Services before they may be modified. 42 U.S.C. § 1396a(a)(13)(D) (1976 & Supp. III 1979). 42 C.F.R. § 447.261(a).[4] In addition, the reimbursement paid to the providers of inpatient hospital services must be for the reasonable cost of those services, not to exceed the calculations for the cost of those services under the Medicare program in 42 U.S.C. § 1395x(v). 42 U.S.C. § 1396a(a)(13)(D) (1976). 42 C.F.R. § 447.261.

The regulation at issue, 114.1 Code Mass. Regs. § 3.06, was promulgated by the Rate Setting Commission in 1980, to be effective on February 1, 1981. The regulation sets the rate at which hospitals are to be reimbursed for their patients who are on "administratively necessary day" status. These patients are originally admitted to hospitals to receive care for their acute conditions, which could only be provided in the hospital setting. When their conditions change so that the medical services they require can be administered in a lower level facility, such as a nursing home, the patients are usually released from the hospital. However, frequently no nursing home beds are available for these patients, and the hospital is forced to keep them. The days during which the hospital continues to provide care for these patients are known as "administratively necessary days."[5]

---

[4] The Federal regulation, 42 C.F.R. § 447.261, was vacated in 1981 at 46 Fed. Reg. 47,971 (1981). The regulation can be found at 43 Fed. Reg. 45,258 (1978).

[5] The definition used in Massachusetts is "a day of acute inpatient hospitalization on which a lower than acute level of care is determined to be appropriate by the PSRO [Professional Standards Review Organiza-

The reimbursement rates for administratively necessary days have been changed several times in the last decade. In 1977, prior to the issuance of the contested regulation, the Legislature directed reimbursement for all administratively necessary days unless an available bed in an appropriate facility could be located within a reasonable distance. St. 1977, c. 363A, § 35. Thus, reimbursement commencing on October 1, 1977, was at a "routine rate," which compensated each hospital for its cost of routine, rather than ancillary, hospital services.

In December, 1980, after a hearing by the Rate Setting Commission, the department submitted a proposed amendment to the Massachusetts State plan to the Regional Medicaid Director for the Department of Health and Human Services for approval, reserving its right to contest the Federal government's position that such approval was required. The new regulation required reimbursement for administratively necessary days at a flat rate of $70 a day for all hospitals. See 114.1 Code Mass. Regs. § 3.06. The rate was to be effective on February 1, 1981, despite the department's failure to obtain approval by the Secretary of the Department of Health and Human Services.[6]

The question in this case is whether the care provided by hospitals to patients on administratively necessary day status is considered to be "inpatient hospital services" under 42 U.S.C. § 1396a(a)(13)(D) (1976). If so, the rates for such care must be approved by the Secretary of Health and

---

ion] but on which an appropriate placement is not available." 106 Code Mass. Regs. § 452.007 (B) (1) (1978).

[6] Although the department submitted the rates to the Federal Regional Medicaid Director, the rates were never approved. In April, 1981, the regional administrator of the Health Care Financing Administration, the financing division of the Department of Health and Human Services, indicated that a compliance hearing on the threshold issue of prior approval was not appropriate, since the flat rate approach was clearly not acceptable. This conclusion was based on the administrator's conclusions that the flat rate does not directly relate to the "reasonable costs" of the services in individual hospitals, and is predicated on the costs of facilities other than hospitals.

Human Services. We conclude that care provided for administratively necessary days constitutes inpatient hospital services. Thus, we affirm the judge's decision that the $70 rate is invalid because it was not approved by the Secretary.[7]

Our analysis of inpatient hospital services must begin with Federal Medicaid regulation 42 C.F.R. § 440.10 (1981), which defines inpatient hospital services to be those services which "are ordinarily furnished in a hospital for the care and treatment of an inpatient," and are provided "under the direction of a physician or dentist." We must construe the regulation according to its plain meaning. *Treasurer & Receiver Gen.* v. *John Hancock Mut. Life Ins. Co.*, 388 Mass. 410, 422 (1983). We conclude that administratively necessary days are plainly encompassed within the regulatory language. The services provided to those patients include services typically or "ordinarily" provided to all inpatients of hospitals, such as bed, board, and basic nursing care. In addition, patients on administratively necessary day status must remain in the hospital until a more appropriate placement is found because they still require medical care. Thus, we assume the care they receive is provided under a physician's direction. See *Commonwealth* v. *Temple Univ. of the Commonwealth Sys. of Higher Educ.*, 21 Pa. Commw. 162, 166 (1975).

The defendants contend that it is "deceptively simple" to argue that because administratively necessary days are days in hospitals, they represent inpatient hospital services.[8] However, we believe that there is no reason to make the meaning of those services more complicated than need be. Thus, we disagree with the defendants' assumption that, because administratively necessary day care could be pro-

[7] The judge based his decision for the plaintiffs on the lack of approval by the Secretary. Thus, we do not reach other issues raised by the plaintiffs concerning the propriety of the procedures employed to arrive at the rate.

[8] Not all categories of services provided in hospitals are covered by the Medicaid program. However, Massachusetts does provide coverage for administratively necessary days.

vided more economically by a nursing home, it is not appropriately rendered by a hospital, and thus does not constitute inpatient hospital services.

The defendants attempt to bolster their argument by citing the Professional Standards Review Organization (PSRO) laws, 42 U.S.C. §§ 1320c et seq. (1976). Under those laws, one responsibility of a PSRO is to ensure that medical care provided under Medicaid is medically necessary and cannot be provided more economically in a lower level facility. See 42 U.S.C. § 1320c-4(a)(1) (1976). Since administratively necessary days can be effectively provided by a lower level facility, the defendants argue they are not appropriately rendered in a hospital and do not constitute inpatient hospital services.

However, under another PSRO provision, 42 U.S.C. § 1320c-9(a)(2) (1976), a patient may continue to remain in a hospital on inpatient status if medically necessary and either the care cannot be provided in a lower level facility or there is no such facility in the area available to provide care to the patient. The defendants argue that this provision is designed for hospital compliance with tort law, rather than to make such care reimbursable. That limitation is not found in the language of the statute. The defendants' analysis, moreover, ignores the need to interpret the statute harmoniously. See *Peters* v. *Michienzi*, 385 Mass. 533, 537 (1982). The defendants cannot claim on the one hand that the PSRO laws define what is an inpatient hospital service, and on the other hand ignore provisions of that law which undermine their position.

In addition, Congress has indicated that administratively necessary days were included within inpatient hospital services at the time in question. In 1980, Congress enacted a law authorizing hospital reimbursement of administratively necessary days at lower than usual rates, equivalent to rates paid to skilled nursing facilities and intermediate care facilities. These lower rates were instituted for all hospitals with occupancy rates of less than eighty per cent. See Medicare & Medicaid Amendments of 1980, Pub. L. No. 96-499,

§ 902, 94 Stat. 2609, 2613 (1980). However, by its very terms, the statute allowed payments for administratively necessary days at inpatient hospital services rates to "continue" in those hospitals with greater than eighty per cent occupancy. *Id.* It is therefore obvious that Congress intended that hospitals should receive inpatient hospital services rates for administratively necessary day care under the Medicaid program.[9] Since the Secretary did not promulgate regulations, the 1980 statute did not become effective, and inpatient hospital services rates continued until 1981, when a new statute was passed. See Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, § 2173, 95 Stat. 357, 808-809 (1981).

The Federal statute focuses on services which are ordinarily provided by hospitals rather than on the patients who ordinarily receive them. It is the type of care provided by a particular institution, rather than the person to whom it is provided, which controls.[10] The level of services would

---

[9] The statutory language is supported by the legislative history. The House Report on the 1980 statute states, "If the hospital's occupancy rate is 80 percent or above, or it cannot obtain a certificate of need . . . payment would be made, *as under present law,* at the hospital rate for such period as it is medically determined the patient requires covered skilled nursing or intermediate care services and an appropriate bed is temporarily unavailable. . . . In past Court cases, decisions have been rendered requiring States to continue to reimburse at the acute care rate for patients in hospitals receiving only [skilled nursing facilities] services because no bed was available in a skilled nursing facility. *At that time, the only reimbursement options were to pay the hospital rate or not pay at all"* (emphasis added). H.R. Rep. No. 1167, 96th Cong., 2d Sess. 63 (1980), reprinted in 1980 U.S. Code Cong. & Ad. News 5576.

[10] Although not identical, the Medicare and Medicaid programs are analogous for our purposes. The Medicare regulations provide a helpful definition of inpatient hospital services, which lists various types of care including bed and board; use of hospital facilities, and diagnostic and therapeutic services; nursing, medical, surgical, and social services; and drugs, supplies, and equipment. See 42 U.S.C. 1395x(v); 42 C.F.R. § 405.116(a). Some of these services are included "only if ordinarily furnished by the hospital for the care and treatment of inpatients." 42 C.F.R. § 405.116(c). This provision parallels the "ordinarily furnished" provision of 42 C.F.R. § 440.10, relating to inpatient hospital services under Medicaid. While the types of services covered under the two programs

only be relevant if the hospital were to provide services not otherwise covered under the Medicaid program. For example, in *Monmouth Medical Center* v. *Harris*, 646 F.2d 74, 78-81 (3d Cir. 1981), a Medicare case, the court held that where there is a shortage of lower level beds, a hospital's provision of skilled nursing care is reimbursable, while unskilled nursing care is not reimbursable. The court's rationale was that the Medicare program does not reimburse intermediate care facilities which provide unskilled custodial care, and therefore those services could not be covered by the program in a hospital. However, under the Medicaid program, the type of care rendered for administratively necessary day patients is provided only in institutions covered by the program. Thus, the place, rather than the level of services, must determine whether the services provided are inpatient hospital services.

Congress has given the Commonwealth and other States broad authority to design their own Medicaid reimbursement systems. See Social Security Amendments of 1972, Pub. L. No. 92-603, 86 Stat. 1329 (1972); *Massachusetts Gen. Hosp.* v. *Weiner*, 569 F.2d 1156 (1st Cir. 1978). Under the program, cost and efficiency concerns embodied in the Medicaid plan are not the only restrictions on the Commonwealth. The department was required to comply with the express terms of the Federal statute. Since administratively necessary day rates are encompassed within inpatient hospital services, the department had to obtain the approval of the Secretary of the Department of Health and Human Services prior to implementing 114.1 Code Mass. Regs. § 3.06. Due to its failure to comply, the department's regulation is invalid.

The defendants also allege that the plaintiffs cannot properly bring this action for rate reimbursement under either

may vary, each stresses the type of service rather than the type of patient who receives it.

We believe the analogy to "inpatient psychiatric hospital services" suggested by the defendant is not apt, see 42 U.S.C. § 1396d(h)(1)(B) (1976), because those services apply to a different category of health care.

State or Federal law. This issue was not reported to us, and thus is not properly before us. See Mass. R. Civ. P. 64, 365 Mass. 831 (1974). Nevertheless, the parties have briefed the issue and we therefore express our view. *Wellesley College v. Attorney Gen.*, 313 Mass. 722, 731 (1943). The plaintiffs are entitled to declaratory relief. G. L. c. 231A. The plaintiffs also allege damages on contract grounds. G. L. c. 258. We reject the defendants' argument that the plaintiffs could not bring this action, at least as to questions of State law.[11]

The plaintiffs claim that the hospitals, as Medicaid providers, entered into contracts with the department, under which they agreed to provide services in exchange for reimbursement in accordance with statutory requirements. Thus, their claims are based "either on an actual or implied contract, or a statutory liability, which gave rise to a contractual relationship when [the plaintiffs] rendered services" to Medicaid patients. *Massachusetts Gen. Hosp. v. Commissioner of Pub. Welfare*, 359 Mass. 206, 209 (1971). The defendants do not disagree with the general proposition that the plaintiffs may maintain this action as against the department. See *Moe v. Secretary of Admin. & Fin.*, 382 Mass. 629, 642-643 (1981). Rather, the defendants argue that G. L. c. 258 provides a remedy to recover the rates set by the Rate Setting Commission, without ref-

---

[11] Although the defendants allege that no Federal cause of action can be implied for providers from the Federal Medicaid laws, declaratory judgment or damage actions for rate reimbursements have been entertained by numerous State and Federal Courts. See, e.g., *California Hosp. Ass'n v. Obledo*, 602 F.2d 1357 (9th Cir. 1979); *Massachusetts Gen. Hosp. v. Weiner*, 569 F.2d 1156 (1st Cir. 1978); *Massachusetts Hosp. Ass'n v. Harris*, 500 F. Supp. 1270 (D. Mass. 1980); *Massachusetts Gen. Hosp. v. Sargent*, 397 F. Supp. 1056 (D. Mass. 1975); *Monmouth Medical Center v. State*, 80 N.J. 299, cert. denied, 444 U.S. 942 (1979). Since such a private right of action has been consistently recognized by many courts, it is therefore "simply beyond peradventure." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 (1983). The availability of other remedies under the Federal Medicaid statute does not negate the existence of an implied remedy, due to the fact that Congress did not deprive providers of that remedy when it amended the statute. *Id.* at 383-386.

erence to Federal law. The defendants argue that "a provider has no contractual right to receive payments in excess of the established rate," *Perkins School for the Blind* v. *Rate Setting Comm'n,* 383 Mass. 825, 832 (1981), claiming that rate is the flat $70 rate established by 114.1 Code Mass. Regs. § 3.06 (1981). We do not agree.

"Established rates" may be defined by reference to G. L. c. 6A, § 32, which applies to the Rate Setting Commission. That statute states, in pertinent part, "Every rate, classification and other regulation established by the commission shall be consistent where applicable with the principles of reimbursement for provider costs in effect from time to time under Titles XVIII and XIX of the Social Security Act." Relying on *New England Medical Center, Inc.* v. *Rate Setting Comm'n,* 384 Mass. 46 (1981), the defendants argue that these reimbursement principles encompass only rate establishment methodologies, rather than the requirement for prior approval by the Secretary. That case, however, states that "the Medicaid statute gives the States authority to implement their own methods of determining reasonable cost reimbursement rates for purposes of Medicaid programs, *subject to the approval of the Secretary of Health and Human Services,* 42 U.S.C. § 1396a(a)(13)(D) (1976)" (emphasis added).[12] *Id.* at 51 n.5. This requirement for prior approval of the Secretary is not simply procedural, as the defendants suggest, but is substantive as well, since the Secretary must determine whether the rates are reasonable. Thus, we conclude that the "established rate" must have received the Secretary's approval before it became effective.[13]

---

[12] The Secretary must also approve each State's plan. One of the more obvious reasons for this is to ensure that the State plans comply with Federal law.

[13] Since the issue of the appropriate rate of reimbursement for the administratively necessary day patients has not yet been heard, and was not reported to us, we merely note that in an analogous New York case, the defendants were "directed to recalculate the amounts owed to members of the plaintiff class under the previously approved reimbursement formula, and to pay the hospitals any additional money that was owing." *Hos-*

The order for partial summary judgment is affirmed. The matter is remanded to the Superior Court for further proceedings.

*So ordered.*

*pital Ass'n of N.Y. State, Inc.* v. *Toia,* 577 F.2d 790, 793 (2d Cir. 1978), referring to *Hospital Ass'n* v. *Toia,* Medicare & Medicaid Guide (CCH) par. 27,941 (S.D.N.Y. 1976).