**Edward HANKE, by his next friend Mary HANKE, Raymond Hanke, by his next friend Beulah Hanke and Harold Atkins, by his next friend Edna Atkins, on behalf of themselves and all others, Appellants,**

v.

**Harry N. WALTERS, in his official capacity as Administrator of the United States Veterans Administration and Robert Blair, in his capacity as Director of the Knoxville Medical Center, Appellees.**

No. 83–2141.

United States Court of Appeals,
Eighth Circuit.

Submitted April 9, 1984.

Decided Aug. 8, 1984.

Martin Ozga, Randi Youells, Legal Services Corporation of Iowa, Des Moines, Iowa, for appellants.

Richard C. Turner, U.S. Atty., Robert C. Dopf, Asst. U.S. Atty., Des Moines, Iowa, for appellees.

Before LAY, Chief Judge, and McMILLIAN and JOHN R. GIBSON, Circuit Judges.

LAY, Chief Judge.

 This action was brought by three veterans of the United States Armed Forces who have been long-term patients in the Veterans Administration Medical Center in Knoxville, Iowa. They all suffer from chronic, degenerative disorders of the

central nervous system. They have been under treatment at the Knoxville facility for a number of years.[1] The veterans seek declaratory relief and to enjoin the Veterans Administration and its officials from transferring them from the Medical Center to private nursing homes. The veterans allege that they have been deprived of a life, liberty, or property interest without due process of law under the fifth amendment.[2] The district court, the Honorable Harold D. Vietor, United States District Judge, Southern District of Iowa, presiding, found that the veterans had no constitutionally protected interest in remaining at the Medical Center and therefore dismissed the veterans' action for failure to state a claim for which relief may be granted or failure on several counts to present a justiciable case or controversy.[3] We reverse and remand to the district court for further proceedings.

*Due Process*

Plaintiffs urge that they have a liberty interest in being free from the psychological trauma which will result from their transfer. *See Yaretsky v. Blum*, 629 F.2d 817 (2d Cir.1980), *rev'd on other grounds*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *but see Moore v. Johnson*, 582 F.2d 1228 (9th Cir.1978). They seek a remand to the district court for an evidentiary hearing to establish a factual basis to demonstrate the existence of "transfer trauma." However, we need not evaluate plaintiffs' claim in such undecided terms.

In *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), a state prisoner challenged his transfer from a penal institution to a mental hospital. The Nebraska statute which authorized such a transfer provided that a prisoner could be transferred if "a designated physician finds

---

1. Raymond Hanke has been a patient at the Medical Center since 1969, Harold Atkins since 1978, and Edward Hanke since 1979.

2. Although a decision as to the transfer of an individual veteran is not reviewable by the court, 38 U.S.C. § 211(a) (1982), constitutional challenges to the Administrator's actions are subject to our scrutiny. *Johnson v. Robison*, 415

U.S. 361, 366–69, 94 S.Ct. 1160, 1165–66, 39 L.Ed.2d 389 (1974).

3. Either the district court, or the plaintiffs themselves, dismissed all counts of plaintiffs' complaint setting forth various grounds for relief; plaintiffs appeal only counts one and five.

656

that a prisoner 'suffers from a mental disease or defect' that 'cannot be given proper treatment' in prison." *Id.* at 489, 100 S.Ct. at 1261. The Supreme Court held that an objective expectation that the prisoner would not be transferred unless he suffered from a mental disease or defect that could not be adequately treated in the prison gave the prisoner a liberty interest that entitled him to the benefits of appropriate procedures. *Id.* at 490, 100 S.Ct. at 1262.

Similarly, in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that a state statute which provided that a prisoner's "good-time" credits could only be forfeited for serious misconduct entitled the prisoner to procedural protections. The Court stated: "Since prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed." *Id.* at 558, 94 S.Ct. at 2976.

■ In the instant case, the relevant statute[4] allows the Administrator to transfer a veteran only after a determination that the veteran has received "maximum benefits" from the care available at the hospital but the veteran still requires a "protracted period of nursing home care." 38 U.S.C. § 620(a)(2)(i). The statute makes the determination of when a veteran has received maximum benefits "critical" in deciding whether to transfer the veteran. We note also that neither party contends that hospital *practice,* as opposed to hospital *policy,* should have indicated to the veterans that transfers were possible without appropriate procedures. On the contrary, the administration of the Medical Center acknowledges that until sometime in 1982, "the discharge of patients who had received maximum hospital benefits [was] not being observed." Thus, the veterans' expectation of process was justifiable.

We therefore find, contrary to the district court's ruling, that the statute creates an objective expectation that the veterans will not be transferred absent a formal determination that they have received the maximum benefits available at the hospital. This justifiable and objective expectation, like that held by the prisoners in *Vitek* and *Wolff,* rises to the level of a constitutionally protected liberty interest and requires appropriate process in the determination that the statutory criteria for transferring the veterans are met.

■ Due process is flexible and calls for such procedural protections as the particular situation demands. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). What process is constitutionally due cannot be divorced from the nature of the ultimate determination being made. *Parham v. J.R.,* 442 U.S. 584, 608, 99 S.Ct. 2493, 2507, 61 L.Ed.2d 101 (1979).

■ The process that will adequately protect these veterans is similar to that outlined in *Parham,* 442 U.S. at 606–17, 99 S.Ct. at 2506–11. An independent medical decision-making process is what is required in resolving what is basically a medical question: whether the patient has received the maximum benefits available at the hospital. A staff physician suffices to fulfill this need "so long as he or she is free to evaluate [this question] independently."

4. Under 38 U.S.C. § 620(a) (1982):
[T]he Administrator may transfer—
(1) Any veteran who has been furnished care by the Administrator in a hospital under the direct jurisdiction of the Administrator,
\* \* \* \* \* \*
to any public or private institution not under the jurisdiction of the Administrator which furnishes nursing home care, for care at the expense of the United States, only if the Administrator determines that—

(i) such veteran has received maximum benefits from such care in such hospital, but will require a protracted period of nursing home care which can be furnished in such institution, and
(ii) the cost of such nursing home care in such institution will not exceed 45 percent of the cost of care furnished by the Veterans' Administration in a general hospital ....

*Parham,* 442 U.S. at 607–09, 99 S.Ct. at 2506–07. It is not necessary that a formal or quasi-formal hearing be held; informal, traditional medical investigative techniques may be employed. All sources of information that are traditionally relied upon by physicians should be consulted. *Parham,* 442 U.S. at 609, 99 S.Ct. at 2507. Notice and an opportunity to present medical information that they believe to be material to the transfer decision should be given to the family or representatives of the patient. The decision differs little from those made regularly in hospitals throughout the United States by physicians to determine whether a patient requires continued hospital care or may be transferred to a nursing home. Numerous medical regulations govern similar questions. *See* 42 C.F.R. §§ 405.160, 405.162 (1983). We think it is also evident that once the staff physician makes this decision under the appropriate procedural protections, it is a final decision under 38 U.S.C. § 211(a).

*Rule Making*

■ The veterans also contend that the Veterans Administration's recent program of transferring custodial care patients to nursing homes under 38 U.S.C. § 620 constitutes a new "rule" for which the Administrative Procedure Act, 5 U.S.C. §§ 551–559 (1982), requires formal rule making procedures. *Id.* at 553. We agree with the district court that the exception found in § 553(b)(A) applies. Under this exception, promulgation of "rules" interpreting established policy does not require formal rule making procedures. In the instant case, the rule allowing for transfers has been part of the Veterans Administration's statutory mandate for some time. We find that the Veterans Administration's decision to accelerate transfers pursuant to this rule is, at most, a new policy which acts as a clarification of existing law and as such is exempt from formal rule making procedures. *See Iowa Power & Light Co. v. Burlington Northern, Inc.,* 647 F.2d 796,

811 (8th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982).

We therefore reverse the district court's grant of the motion to dismiss and remand the case for further proceedings consistent with this opinion.[5]

Costs are awarded to appellants.

---

**5.** Because we find that 38 U.S.C. § 620 creates a liberty interest on the part of the veterans, we

need not address their arguments relating to other allegedly protected interests.