NORFOLK COUNTY HOSPITAL & others[1] *vs.* COMMONWEALTH
& others.[2]

No. 87-311.

Norfolk. June 12, 1987. — April 8, 1988.

Present: GRANT, PERRETTA, & WARNER, JJ.

*Practice, Civil,* Injunction. *Injunction. Medicaid. Hospital,* Medicaid reimbursement.

A judge did not err in denying a request by plaintiffs, providers of chronic medical care and rehabilitative services, for a preliminary injunction seeking to prevent the Commonwealth and its officials from enforcing various regulations which provide for reduced reimbursements under the Medicaid program to such providers when the required medical treatment could have been delivered at a lower-level health care facility, where the plaintiffs demonstrated little likelihood of success on the merits of their claim and where, if they did prevail, they would receive full reimbursement and would lose nothing. [588-594]

CIVIL ACTION commenced in the Superior Court Department on January 6, 1987.

A motion for a preliminary injunction was heard by *Ernest S. Hayeck, J.*

*Edward D. Kalman* (*Andra R. Hotchkiss* with him) for the plaintiffs.

*William L. Pardee,* Assistant Attorney General, for the defendants.

PERRETTA, J. Pursuant to G. L. c. 231, § 118, second par., the plaintiffs appeal from an order denying their application for a preliminary injunction seeking to prevent the defendants from

---

[1] Plymouth County Hospital, Dr. J. Robert Shaughnessy Chronic Disease/Rehabilitation Hospital, Dr. Mehbooba Anwar, Dr. Anne Dantzler, and Dr. Maurice Greenbaum.

[2] The Department of Public Welfare, its Commissioner, the Rate Setting Commission, and its Chairman.

enforcing various regulations which allow for reduced reimbursements under the Medicaid program to providers of chronic care and rehabilitation services where it has been determined that the required medical treatment could have been delivered at a lower-level health care facility. Applying the test set out in *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 617 (1980), we affirm.

I. *Background.*

Under the Medicaid program, the Federal government provides financial assistance to States participating in the program in order that they may deliver health care to needy persons. This Federal program "confers broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be 'reasonable' and 'consistent with the objectives' of the Act." *Beal* v. *Doe*, 432 U.S. 438, 444 (1977), quoting from 42 U.S.C. § 1396a(a)(17) (1970, Supp V). The plaintiffs provide chronic care and rehabilitative services as compared to long-term or acute short-term care delivered by nursing homes and general hospitals, respectively. See and compare 105 Code Mass. Regs. § 130.026(M) and (N) (1984) with § 150.001 (1984).

It is unnecessary to describe in any detail the regulatory program enacted in Massachusetts under its broad discretionary powers. See *Addison Gilbert Hosp.* v. *Rate Setting Commn.*, 390 Mass. 17, 19 (1983); *New England Memorial Hosp.* v. *Rate Setting Commn.*, 394 Mass. 296, 298 (1985); *Lynn* v. *Rate Setting Commn.*, 21 Mass. App. Ct. 576, 579-580 (1986). The plaintiffs challenge on grounds too numerous to tally (although the defendants' count is forty-four) those regulations which set out the level-of-care criteria for chronic disease hospitals[3] and the rate of payment for services provided to publicly-aided individuals and which allow for the imposition of a penalty where it is determined that placement of a patient at a

---

[3] Title 106 Code Mass. Regs. § 435.409 (1984) (explicit standards by which to determine what particular services require physician or nursing care); § 435.411 (1984) (examination of chronic hospital utilization review decisions); § 435.413 (1984) (calculation and imposition of administrative day penalty).

chronic care hospital was inappropriate in that the care given could have been provided at a lower-level facility.[4] Cf. *Addison Gilbert Hosp.* v. *Rate Setting Commn.*, 390 Mass. at 19; *New England Memorial Hosp.* v. *Rate Setting Commn.*, 394 Mass. at 298. To the extent that some of the plaintiffs' arguments pertain to the application of the disputed regulations to any specific one of the three plaintiff hospitals, we do not consider them and, instead, leave those plaintiffs to their administrative remedies. See *Medi-Cab of Massachusetts Bay, Inc.* v. *Rate Setting Commn.*, 401 Mass. 357, 363-364 & n.9 (1987); *Beth Israel Hosp. Assn.* v. *Rate Setting Commn.*, 24 Mass. App. Ct. 495, 501-502 (1987).

II. *Standard of Review.*

In determining whether it was error to deny the application for a preliminary injunction, we "look to the same factors properly considered by the judge in the first instance." *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. at 615-616. Our examination "involves a combined evaluation of the moving party's claim of injury and its chance of success on the merits." *Westinghouse Bdcst. Co.* v. *New England Patriots Football Club, Inc.*, 10 Mass. App. Ct. 70, 72 (1980), citing *Cheney* at 617.

We think it important to note from the outset that the proper focus in evaluating irreparable harm in this case is on the plaintiffs and not their nonparty patients.[5] Further, the harm

---

[4] Title. 114.1 Code Mass. Regs. § 28.09(4) (1986) provides for the calculation of the reimbursement rate which, along with the penalty provisions, will result in a reduced level of reimbursement for a given year where it is determined that two years prior, reimbursement was paid at a certain hospital-level rate when that level of hospital care was not rendered:

[5] This is not a situation where the recipients of benefits under an assistance program challenge the level of their benefits. See *Rosado* v. *Wyman*, 397 U.S. 397 (1970). Nor is this a case where individual patients are challenging: (a) transfers to lower-level care facilities (see *Blum* v. *Yaretsky*, 457 U.S. 991 [1982]; *Hanke* v. *Walters*, 740 F.2d 654 [8th Cir. 1984]); (b) reductions in specific services (see *Budnicki* v. *Beal*, 450 F. Supp. 546 [E.D. Pa. 1978]); (c) determinations of eligibility for benefits (see *New York* v. *Heckler*, 578 F. Supp. 1109 [E.D. N.Y. 1984]); (d) denials of claims (see *Easley* v. *Arkansas Dept. of Human Services*, 645 F. Supp. 1535 [E.D. Ark. 1986]); or (e) terminations of benefits (see *Tripp* v. *Coler*, 640 F. Supp. 848 [N.D. Ill. 1986]).

to the plaintiffs must be direct, that is, it is not enough for the plaintiffs, as providers of medical services, simply to allege general harm to the public interest. See *Metropolitan Dist. Commn.* v. *Codex Corp.*, 395 Mass. 522, 526 (1985), contrasting *Commonwealth* v. *Mass. CRINC*, 392 Mass. 79, 89-90 (1984). See also *Brookline* v. *Goldstein*, 388 Mass. 443, 447-451 (1983).

III. *Success on the Merits.*[6]

a. *Prior Federal approval.* At this preliminary stage it has not been shown that the plaintiffs will have a high probability of success on their claims that the challenged regulations are void for want of approval by the Secretary of Health and Human Services (Secretary). The Commonwealth has given assurances to the Secretary that its reimbursement plan will provide for payments which "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A) (1982). We see no argument in the plaintiffs' brief directed to the issues of the sufficiency of the assurances or the Secretary's satisfaction with them. See *New England Memorial Hosp.* v. *Rate Setting Commn.*, 394 Mass. at 300-301.

b. *Conflict between State and Federal provisions.* Under 106 Code Mass. Regs. §§ 435.411(A), (B), and (C) (1984) there are three distinct means by which a "utilization review"[7] can be made: (A) by the hospital itself; (B) by a designee of the Department of Public Welfare (the department) "in lieu of the determination" made by the hospital; and (C) by the department, reviewing independently the determinations made by the hospital or the department's designee. Federal requirements for a sufficient utilization review plan are set out, in part, at 42 U.S.C. § 1395x(k)(2) (1982).[8] Subparagraph (2) allows for

---

[6] As noted, the plaintiffs' claims are unnecessarily numerous. Many require no discussion, and others either overlap or merge. We have classified the primary contentions into five groups.

[7] A determination of the "medical or administrative necessity and appropriateness of each inpatient hospital admission and continued stay of a recipient in accordance with the level-of-care criteria" established in § 435.11.

[8] Title 42 U.S.C. § 1395x(k)(2) (1982) reads: "A utilization review plan of a hospital or skilled nursing facility shall be considered sufficient if it

review by the hospital itself through a staff committee or by a committee similarly comprised (at least two or more physicians) or a corresponding group from outside the hospital. There is nothing in this provision concerning utilization review by a State agency or its designee. Further, subparagraph (2)(B)(ii) could be read as precluding a utilization review by an independent committee where such review is made by a hospital staff committee.

Although there appear to be differences between 106 Code Mass. Regs. § 435.411 (1984) and 42 U.S.C. § 1395x(k)(2) (1982), the differences do not on this preliminary showing appear so great as to constitute an obvious conflict requiring the issuance of a preliminary injunction against the defendants' reliance upon the department's utilization review regulations in computing reimbursement payments to the plaintiffs. Not only are we mindful of the fact that the Federal government requires that State plans be " 'reasonable' and 'consistent with the objectives' of the Act," *Beal* v. *Doe*, 432 U.S. at 444, we think it of some importance that an express objective of the medicaid program is "to safeguard against unnecessary utilization of . . . [available] care and services." 42 U.S.C. § 1396a(a)(30)(A) (1982). As we read that provision with 42 U.S.C. § 1396b(i)(4) (1982),[9] it would not appear unreasonable to interpret

---

is applicable to services furnished by the institution to individuals entitled to insurance benefits under this subchapter and if it provides —

"  .   .   .

"(2) for such review to be made by either (A) a staff committee of the institution composed of two or more physicians (of which at least two must be physicians described in subsection (r)(1) of this section), with or without participation of other professional personnel, or (B) a group outside the institution which is similarly composed and (i) which is established by the local medical society and some or all of the hospitals and skilled nursing facilities in the locality, or (ii) if (and for as long as) there has not been established such a group which serves such institution, which is established in such other manner as may be approved by the Secretary."

[9] "Payment under the preceding provisions of this section shall not be made — . . . (4) with respect to any amount expended for care or services furnished under the plan by a hospital or skilled nursing facility unless such hospital or skilled nursing facility has in effect a utilization review plan which meets the requirements imposed by section 1395x(k) of this title for purposes of subchapter XVIII of this chapter, and if such hospital or skilled

§ 1395x(k)(2) as setting out minimal requirements for acceptable utilization review procedures and not as precluding adoption of more strict, if reasonable, review methods. Further, payments by the Federal government to the Commonwealth under § 1396 may be indicative of approval by the Secretary of any deviation in 106 Code Mass. Regs. § 435.411 (1984) from the requirements of § 1395x(k)(2). See note 9, *supra*.

c. *Interference with treatment decisions.* General Laws c. 118E, § 4, inserted by St. 1969, c. 800, § 1, provides in relevant part: "In administering the program, the department shall formulate such methods, policies, procedures, standards, and criteria, *except medical standards and criteria,* as may be necessary for the proper and efficient operation of the plan in a manner consistent with simplicity of administration and the best interests of the recipients" (emphasis supplied). The plaintiffs claim that 106 Code Mass. Regs. §§ 435.409(A) and (B) (1984) are "medical standards and criteria." Paragraph (A) requires that for a patient to be considered appropriately placed at a chronic disease hospital, that patient must need "nursing services seven days a week for an average of 4.5 hours daily," and of this time, "[o]n average, at least 1.5 hours of this nursing care must consist of skilled nursing services" as therein defined by examples but without limitation. Under paragraph (B), the patient "must require, on average, treatment by a physician on a weekly basis" and that treatment "must be care that only a physician can provide."[10]

---

nursing facility has in effect such a utilization review plan for purposes of subchapter XVIII of this chapter, such plan shall serve as the plan required by this subsection (with the same standards and procedures and the same review committee or group) as a condition of payment under this subchapter; the Secretary is authorized to waive the requirements of this paragraph if the State agency demonstrates to his satisfaction that it has in operation utilization review procedures which are superior in their effectiveness to the procedures required under section 1395x(k) of this title . . . ."

[10] However, should a patient have those needs described in (A) but not (B), the patient may nonetheless be considered an appropriate chronic care hospital placement by reason of the need for special but nonphysician treatment liberally described in §§ 435.409(C) and (D) (1984), as discussed *infra.*

These regulations do not dictate the nature or degree of medical treatment to be given a patient. Rather, as we read them, the criteria are used in determining the level of reimbursement. If it is determined that the services actually provided a patient do not meet the criteria in the regulations, that patient's placement in a chronic care hospital will be deemed inappropriate in that his medical needs could and should have been met at a lower-level care facility. Accordingly, the hospital will be reimbursed at a lower rate. When the criteria are thus construed, we see no contravention of the statutory exception. Further, the regulations are consistent with the Federal mandate that State plans provide "in the case of hospital patients receiving services at an inappropriate level of care . . . for lower reimbursement rates reflecting the level of care *actually received*" (emphasis supplied). 42 U.S.C. § 1396a(a)(13)(A). See also *Beal* v. *Doe*, 432 U.S. at 444-445 ("[I]t is hardly inconsistent with the objectives of the Act for a state to refuse to fund unnecessary — though perhaps desirable — medical services").

d. *Sufficiency of the regulations.* In a somewhat related argument, the plaintiffs contend that the criteria set out in 106 Code Mass. Regs. §§ 435.409(A) and (B) (1984) are so arbitrary and rigid that certain types of patients will not receive proper care and treatment. They maintain that the regulations make inadequate provision for patients requiring respiratory care or who are in need of intensive nursing, but not physician, care.

It is the plaintiffs' burden to show that the "adoption of the . . . regulation was illegal, arbitrary, or capricious." *Massachusetts State Pharmaceutical Assn.* v. *Rate Setting Commn.*, 387 Mass. 122, 126 (1982). Here, the rigid standards of subparagraphs (A) and (B) must be read in the light of subparagraphs (C) and (D), which allow for flexible alternatives to the criteria about which the plaintiffs complain. See note 10, *supra*. Without precluding a showing on the merits that certain categories of patients will be left without necessary services, we are not convinced that the regulations have been shown invalid at this stage of the litigation.

e. *Notice and hearing.* Because there is no provision in the regulations that patients be given notice or the opportunity to be heard regarding their utilization review audits, the plaintiffs claim that the review procedures do not meet the requirements of 42 C.F.R. §§ 431.200 et seq., and that, therefore, they are invalid. We think that the plaintiffs misconstrue the Federal regulations which they here rely upon and which set out procedural requirements for *prospective* assessments of a patient's needs rather than a retrospective determination of a reimbursement rate.[11] We see little likelihood of success for the plaintiffs on this claim.

IV. *Irreparable Harm.*

We have before us statistics, percentages, and other calculations, all purporting to demonstrate the harm to the plaintiffs if their reimbursement rates are reduced. However, in arguing that they and their patients will suffer irreparable harm in the absence of injunctive relief, the plaintiffs again fail to recognize that any reduction in their reimbursement rate will be ostensibly due to the inappropriate placement of patients and proportional to the number of the inappropriate placements. That objective is surely valid, and it has not been shown at this preliminary stage that the categories established by the regulations do not sufficiently provide for the health needs of patients.

Moreover, if the plaintiffs prevail on the merits, they will be reimbursed in full and will have lost nothing. See *Westinghouse Bdcst. Co.* v. *New England Patriots Football Club, Inc.*, 10 Mass. App. Ct. at 72.

V. *Conclusion.*

There is nothing in the record of this case which causes us to conclude that the judge who denied the preliminary injunc-

---

[11] As expressed in § 431.200, the purpose of the Federal regulations here at issue is: "This subpart implements section 1902(a)(3) of the Act, which requires that a State plan provide an opportunity for a fair hearing to any person whose claim for assistance is denied or not acted upon promptly. This subpart also prescribes procedures for an opportunity for hearing if the Medicaid agency takes action to suspend, terminate, or reduce services."

tion committed an error of law, abused his discretion, or misapplied the balancing test of the *Packaging Indus.* case, 380 Mass. at 617. Accordingly, we deny the plaintiffs appellate relief.

*Order denying motion for preliminary injunction affirmed.*