Lopez, J.
Plaintiff Germaine Beger (“Ms. Beger”) claims that the Defendant, Division of Medical Assistance (“Division”), wrongfully denied her breast reconstruction surgery after her defective breast implants were removed. Count I of the complaint seeks judicial review of the Division’s decision under G.L.c. 30Á, § 14. Count II alleges that the denial was a violation of her equal protection rights under the Massachusetts Declaration of Rights and the U.S. Constitution. Count III asserts that the denial was a violation of the Medicaid Act. The parties filed a joint motion to stay the proceedings of Counts II and III. Ms. Beger filed this motion for summary judgment on Count I, which shall be treated as a motion for judgment on the pleadings. For the following reasons, the Division’s decision is REVERSED.
BACKGROUND
The following facts are undisputed. Ms. Beger is a 49-year-old Medicaid recipient who for the past 25 years has lived as a woman. In 1975, Ms. Beger received breast implants as part of her sex-reassignment transition. In December 1998, on a referral by her doctor Dr. Jeffrey Korff (“Korff’), Ms. Beger sought treatment for a possible cyst in her right breast. After that evaluation, an MRI was conducted on January 12, 1999 by Dr. Laurie Loiacana (“Loiacana”), who determined that both of Ms. Beger’s breast implants needed to be removed, one due to calcification and the other due to leakage. On March 26, 1999, Surgeon Kristin Steuber (“Steuber”) submitted a Prior Authori *746 zation Request to the Division stating that surgery to remove the implants and reconstruct the breasts was medically necessary.
Dr. Linda Clayton (“Clayton”), a doctor for the Division, approved the Prior Request for removal of the breast implants but denied the request for reconstruction, and wrote in the space for reason: “(s]ee regulation 130 CMR 433.404(B).”[2] On March 29, 1999, the Division authorized the removal of the implants but denied the insertion of saline breast implants to reconstruct the breasts citing both 130 CMR 450.204[3] and 130 CMR 433.404(B). On April 7, 1999, Ms. Beger filed a Request for a Fair Hearing to review the Division’s decision. On June 25, 1999, the Board of Hearings held a hearing to review the Division’s decision. On August 25, 1999, the Division's hearing officer denied Ms. Beger’s appeal and affirmed the Division’s decision to deny Ms. Beger’s request for breast reconstruction surgery. Ms. Beger filed this action on September 24, 1999.
DISCUSSION
The question before this Court is whether the Division’s action denying Ms. Beger’s breast reconstruction surgery is arbitrary, capricious, or contrary to law under G.L.c. 30A, §14(7). The Division, as a recipient of federal funding, must comply with the requirements of Title XIX of the Social Security Act and the implementing regulations. See Haley v. Commissioner of Public Welfare, 394 Mass. 466, 467 (1985). Medicaid “confers broad discretion on the States to adopt standards for determining the extent of medical assistance, requiring only that such standards be ‘reasonable’ and ‘consistent with the objectives of the Act.’ ” Norfolk County Hospital v. Commonwealth, 25 Mass.App.Ct. 586, 587, rev. denied 402 Mass. 1104 (1988), quoting Beal v. Doe, 432 U.S. 438, 444 (1977). The Court shall “give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” G.L.c. 30A, §14(7). An agency’s interpretation of its own regulation is generally entitled to great weight and should be overturned only if it is arbitrary or unreasonable. See Norwood Hospital v. Commissioner of Public Welfare, 417 Mass. 54, 58 (1994).
As the decision to deny Ms. Beger’s breast reconstruction surgery was based on a question of law, the court reviews the interpretation de novo. See Hogan v. Labor Relations Commission, 430 Mass. 611, 613 (2000); Haverhill Municipal Hospital v. Commissioner of the Division of Medical Assistance, 45 Mass.App.Ct. 386, 390, rev. denied 428 Mass. 1107 (1998). The court may compel any action unlawfully withheld or unreasonably delayed if it determines that the substantial rights of any party have been prejudiced when the agency decision is: 1) based upon an error of law; 2) arbitrary or capricious; or 3) unsupported by substantial evidence. See G.L.c. 30A, §14(7)(c), (e), (g).
At the hearing, Clayton testified that the breast reconstruction surgery could not be performed on Ms. Beger because the Division did not cover surgeries related to sex-reassignment under 130 CMR 433.404(B). Clayton stated that in making her recommendation she relied completely on a legal interpretation of the regulation. Because of that regulation, Clayton asserted, a determination of whether the procedure was a medical necessity was unnecessary.
The hearing officer determined that the Division’s decision to deny Ms. Beger’s breast reconstruction surgery was correct because the “the present need for replacement implants arises in fact because the appellant underwent sex-reassignment in the first place and this fact makes the requested surgical procedure related to the previous sex-reassignment surgery.” Recognizing a difference between the two, the hearing officer stated that “(t]he removal of defective implants presents a situation where the absence of such removal poses a medical threat to the appellant’s continued health. I find nothing incompatible with the removal of defective implants and the regulatory prohibition for replacement implants related to post sex-reassignment surgery.”
I. The Division’s Decision Is Incorrect as a Matter of Law. The hearing officer affirmed the Division’s denial of breast reconstruction surgery for Ms. Beger under 130 CMR 433.404(B), finding that the regulation “was meant to encompass all procedures and treatments related to sex-reassignment surgery without regard to time elapsed." The Court finds that construction of the regulation incorrect as a matter of law for two reasons. First, the construction of the words “related to” sweeps too broadly. Under the Division’s interpretation any treatments available to females would have to be denied to Ms. Beger. That, however, is not how the Division applies its regulations. The record indicates that Ms. Beger is entitled to receive routine gynecological care. Removal of Ms. Beger’s breast implants has been authorized by the Division. These treatments are clearly related to her sex-reassignment surgery. In addition, the Division’s reading of “related to” would include miscellaneous medical issues that only a woman might encounter, such as allergic reactions to female hygiene products. The words “related to” have to be given a narrower scope. Reading the regulation in context with the entire regulatory scheme, the regulation at issue is meant to apply only to those surgeries and treatments that accomplish sex-reassignment.
Second, the Division’s finding that 103 CMR 433.404(B) applies without regard to time elapsed from sex-reassignment surgery is in error. The only reference to a time frame in the regulation grandfathers in individuals who were receiving post-surgery hormone therapy prior to May 15, 1993. Thus, contrary to the Division’s interpretation, the regulation contemplates time elapsed from sex-reassignment *747 surgery. The Division’s argument that the exception for post-surgeiy hormone therapy is the only one allowed by the regulation ignores the reference in the exception to the preceding sentence[4] which denies payment for sex-reassignment surgery “including pre- and post-sex-reassignment hormone therapy.” Thus, the exception for post-surgery hormone therapy specifically modifies the prior sentence and is not, as the Division contends, a limitation on the treatment available for individuals who have completed their transition. Indeed, as this case shows, the Division provides a number of medical treatments to individuals who have completed their transition.
This Court finds that 103 CMR 433.404(B) is meant to cover only those surgeries and treatments intended to accomplish sex-reassignment and not to surgeries and treatments needed by individuals who have completed their transition. In this case, Ms. Beger’s breast reconstruction is not intended to accomplish a sex-reassignment. Ms. Beger has been a woman for 25 years. Ms. Beger’s request does not fall within 103 CMR 433.404(B). Ms. Beger was entitled to be considered for breast reconstruction only under 130 CMR 433.451(B)(3).[5]
II. The Division’s Decision is Arbitrary. The hearing officer found that because replacement breast implants are related to Ms. Beger’s sex-reassignment surgery, “medical necessity” did not need to be considered in this case.[6] The Court finds this conclusion illogical and arbitrary. Clearly, both the removal and the replacement of the failed implants are related to Ms. Beger’s sex-reassignment surgery. Here, the Division applied medical necessity to the removal of the implants. It is only logical and reasonable too apply medical necessity to their replacement. It is arbitrary and capricious for the Division to find that it will pay for the removal of Ms. Beger’s implants but will not even consider the medical necessity of replacing the implants it will pay to remove. The Division’s action in this case simply punishes Ms. Beger because her implants failed after 25 years.
III. The Division’s Decision is Unsupported by Substantial Evidence. An administrative agency’s decision must be supported by substantial evidence, defined as “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Pyfrom v. Commissioner of Public Welfare, 39 Mass.App.Ct. 621, 624 (1996), quoting G.L.c. 30A, §1. “In order to determine if an agency’s decision is supported by substantial evidence, one must examine the entire administrative record and take into account whatever detracts from its weight.” Pyfrom, 39 Mass.App.Ct. at 624-25, citing New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466 (1981). If the evidence points to an overwhelming probability to the contrary, the agency’s decision maybe set aside. Pyfrom, 39 Mass.App.Ct. at 625, quoting New Boston Garden, 383 Mass. at 466.
The Division’s denial of breast reconstruction surgery is not supported by substantial evidence. The Division introduced no evidence showing that the breast reconstruction was not medically necessary. The surgery sought here is reconstructive surgery. Reconstructive surgery is defined as “a surgical procedure that is performed to correct, repair, or ameliorate the physical effects of physical disease or defect (for example, correction of cleft palate), or traumatic injury.” 130 CMR 433.401. In its surgical services section, the Division states that reconstructive surgery is reimbursable to physicians when it is medically necessary to correct the physical effects of a defect, or traumatic injury. See 130 CMR 433.451(B)(3). Ms. Beger introduced uncontroverted evidence that the breast replacement surgery was sought to correct the physical effects of the removal of the defective breast implants.
Clayton testified that Ms. Beger successfully completed her sex-reassignment surgery in 1975 and has lived as a woman for 25 years. Clayton also testified that the Division provides breast reconstruction surgery for women who have lost their breast due to congenital deformity, injury, or mutilating surgery.[7] In addition, Clayton testified that the decision to provide a woman with breast reconstruction would largely be made on an individual basis between a patient and her doctor. There was substantial evidence, in the form of testimony and letters from doctors showing that Ms. Beger’s breast reconstruction surgery was medically necessary under 130 CMR 450.204(A).[8] The evidence presented by Ms. Beger demonstrated that the surgery “is reasonably calculated to . . . correct. . . conditions . . . that . . . cause suffering or pain, [or] cause physical deformity” and that because of Ms. Beger’s allergic reaction to hormone treatments, there exists “no other medical service . . . comparable in effect, .. . available, and suitable . . . that is more conservative or less costly to the Division.”[9] 130 CMR 450.204(A)(1) & (2). The evidence presented by Ms. Beger which was not rebutted by the Division should have been credited by the hearing officer. As the Division failed to provide any evidence that the surgery is not medically necessary, the decision by the hearing officer is not supported by the record.
IV.Conclusion. The Court finds that the Division’s decision is based on an error of law, is arbitrary and is not supported by substantial evidence. As a result, Ms. Beger’s right to breast reconstruction, which is a substantial right, has been unlawfully withheld and unreasonably delayed.
ORDER
For the foregoing reasons, the decision by the Division of Medical Assistance denying Germaine Beger breast reconstruction surgery is hereby REVERSED. The Division of Medical Assistance is directed to authorize payment for Germaine Beger’s breast reconstruction surgery.

Under “[nlonreimbursable [cjlrcumstances,” 130 CMR 433.404(B) states:
The Division will not pay a physician for performing, administering, or dispensing any experimental, unproven, cosmetic, or otherwise medically unnecessary procedure or treatment, specifically including but not limited to, sex-reassignment surgery, thyroid cartilage reduction surgery, and any other related surgeries and treatments, including pre- and post-sex-reassignment surgery hormone therapy. Notwithstanding the preceding sentence, the Division will continue to pay for post-sex-reassignment surgery hormone therapy for which it had been paying immediately prior to May 15, 1993.

The Division concedes in its memorandum that a data entry error resulted in the citation to 130 CMR 450.204. Ms. Beger was denied the breast reconstruction surgery solely on the basis of 130 CMR 433.404(B).

‘Notwithstanding the preceding sentence . . .”

 103 CMR 433.451(B)(3) states:
Reconstructive surgery is reimbursable only when determined by the Division pursuant to a request for prior authorization to be medically necessary to correct, repair or ameliorate the physical effects of physical disease or defect, or traumatic injury.

 103 CMR 450.204(A) defines a service as “medically necessary” if:
(1) it is reasonably calculated to prevent, diagnose, prevent the worsening of, alleviate, correct, or cure conditions in the member that endanger life, cause suffering or pain, cause physical deformity or malfunction, threaten to cause or to aggravate a handicap, or result in illness or infirmity; and
(2) there is no other medical service or site of service, comparable in effect, available, and suitable for the member requesting the service, that is more conservative or less costly to the Division. Services that are less costly to the Division include, but are not limited to, health care reasonably known by the provider, or identified by the Division pursuant to a prior authorization request, to be available to the member through sources described in 130 CMR 450.317(C), 503.007, or 517.007.

 114.3 CMR 16.05 provides, under ambulatory care, for at least seven different types of breast reconstruction surgery.

The request by Steuber stated that “(blecause of the patient’s status, it is felt medically necessary to replace the implants with saline implants.” On June 17, 1999, Steuber wrote the Division a letter stating “there is no question that new implants are medically necessary ... As with any other woman, Ms. Beger has suffered injury to her breasts which needs medical attention. Implant replacement is not merely cosmetic ... Replacement will thus alleviate, correct and cure Ms. Beger’s suffering and pain, and it will also prevent a physical deformity which would result from the removal of implants were there not a corresponding replacement."
Doctors Margaret Harak (a licensed psychologist and Ms. Beger's current therapist) and Martha Woodard (licensed psychologist) and Florence Mayer (a licensed marriage and family therapist) wrote a letter to Massachusetts Health Insurance on March 10, 1999, stating that “(a]s Ms. Beger had a sex change operation over twenty years ago and clearly identifies herself as a woman, her breast implants do not serve a merely cosmetic purpose. Rather, she views her implants as an integral part of her identity. Therefore, we strongly believe that psychologically, it is in Ms. Beger’s best interests to have her implants replaced.”
Dr. Kevin Epstein (Ms. Beger’s primary care provider since June 1997) wrote to the Division of Medical Assistance on June 23, 1999 stating that “failure to cosmetically reaugment her breast(s) would likely contribute to an exacerbation of the many psychological issues that she deals with on a daily basis. Overall it is safe to say that failure to provide breast reconstruction at this point will likely have a long lasting psychological impact which would be devastating to her.”
Nurse Bette Kisner (an advance practice nurse who is a clinical specialist in psychiatric and mental health nursing, specializing in the treatment of patients with cancer, especially women with breast cancer) wrote a letter to the Division of Medical Assistance on June 24, 1999, stating that the breast replacement is medically necessary since “the breast implants are integral to her sense of identity as a woman. Because Ms[.] Beger’s breasts are a core part of her identity, their pending removal can be compared to the experience that a mastectomy provides for the woman with breast cancer . . . like a woman who loses a breast to mastectomy, Ms. Beger would experience depression, lowered self es[t]eem, a sense of bodily deformity, diminished feelings of attractiveness, and feelings of being viewed as less than feminine . .. because she is transsexual, with the associated discrimination that has accompanied that identity, Ms[.] Beger’s vulnerability to rejection and lon[e]liness is that much greater than that experienced by a non-transsexual female mastectomy patient. The medical necessity for replacing Germaine Beger’s breast implants is without question.”

A letter from Korff on March 16, 1999 states “(s]he has been intolerant to 2 courses of transdermal estrogen in the past due to a rash which will limit our ability to replace her with estrogen and thereby stimulate endogenous breast development. I would therefore recommend, if possible, that following removal of her encapsulated breast implants that you consider reimplantation of new breast prosthesis.”