NEW ENGLAND MEMORIAL HOSPITAL & another[1] *vs.* RATE
SETTING COMMISSION & others.[2]

Suffolk. November 8, 1984. — March 15, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Medicaid. Rate Setting Commission. Hospital,* Medicaid reimbursement.

A regulation of the Rate Setting Commission fixing a rate at which hospitals
were to be reimbursed under the Medicaid program for days of hospitali-
zation of patients awaiting transfer to lower-level care facilities ("ad-
ministratively necessary days") was invalid for failure of the commission
to comply with 42 U.S.C. § 1396a(a) (13) (A), as in effect from August
13, 1981, which required a filing of "assurances" and related information
with the United States Secretary of Health and Human Services. [299-
302]

Where this court held invalid a regulation of the Rate Setting Commission
fixing a rate at which hospitals participating in the Medicaid program
were to be reimbursed for care of patients awaiting transfer to lower-level
care facilities, the hospitals were to be reimbursed at the routine rate,
based on the average cost of routine hospital care, as in effect for the
period in dispute. [302-305]

CIVIL ACTION commenced in the Superior Court Department
on September 18, 1981.

The case was heard by *Hiller B. Zobel,* J., on a motion for
partial summary judgment, and judgment was entered by *Wil-
liam G. Young,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*William L. Pardee,* Assistant Attorney General, for the de-
fendants.

*David S. Szabo (Eric E. Mulloy* with him) for the plaintiffs.

---

[1] Quincy City Hospital.

[2] The chairman of the Rate Setting Commission, the Commissioner of
Public Welfare, the Department of Public Welfare, and the Commonwealth.

*Richard P. Ward & Wayne H. Scott* for Brockton Hospital, Inc., & others, amici curiae, submitted a brief.

LIACOS, J. The plaintiffs (hospitals) challenge the validity of 114.1 Code Mass. Regs. § 3.06 (1981) (the amended regulation),[3] promulgated by the defendant Rate Setting Commission (commission), which established a reimbursement rate to hospitals under the Medicaid program.[4] The hospitals sought to have the amended regulation declared void and to obtain Medicaid payments of which the regulation allegedly deprived them. A Superior Court judge granted the hospitals' motion for partial summary judgment on the issue of liability. Another Superior Court judge then entered a judgment declaring the amended regulation null and void, and ordered that new rates be established by the commission to grant reimbursement to the plaintiffs.[5] We granted the commission's application for direct appellate review.

We summarize the statutory framework within which the challenged amended regulation was enacted. The Medicaid

---

[3] Regulation 114.1 Code Mass. Regs. § 3.06 was published in Mass. Reg. 248, at 2-4 (February 12, 1981), and was subsequently codified in 114.1 Code Mass. Regs. (1981).

[4] The hospitals brought their action for declaratory relief under G. L. c. 231A and G. L. c. 30A, § 7, and under G. L. c. 249, § 5 (mandamus). They also sought the assessment of damages. Since their complaint challenges the validity of a regulation, the relief properly could be sought under G. L. c. 231A and G. L. c. 30A. See *Addison Gilbert Hosp.* v. *Rate Setting Comm'n*, 390 Mass. 17, 25 (1983); *Massachusetts State Pharmaceutical Ass'n* v. *Rate Setting Comm'n*, 387 Mass. 122, 125-127 (1982).

[5] The motion for partial summary judgment related to counts I and VIII of the plaintiffs' amended complaint. Somewhat inconsistently, the motion sought a partial summary judgment as to liability on those counts with damages to be determined later, but then went on to seek declaration of a fixed rate of reimbursement based on the difference between the reimbursement rate of the allegedly invalid regulation ($70 a day) and the prior rate under which each hospital was reimbursed for the same services prior to the date of the amended regulation (February 1, 1981). The motion judge's memorandum of decision accepted the hospitals' views on both points, and a partial declaratory judgment was entered in accordance with the memorandum of decision. The defendants have appealed from that judgment. As will be shown, the prior rates remain in effect until October 1, 1982, and no "new" rates need be set.

program is a cooperative Federal-State program designed to provide medical services to the indigent. While participation in the program is voluntary, once a State chooses to participate, it has to comply with Federal statutory requirements. *Harris v. McRae,* 448 U.S. 297, 301 (1980). Participating States were allowed to set rates of reimbursement to Medicaid providers, but, prior to August 13, 1981, the rate methodology used was not effective unless approved by the Secretary of Health and Human Services (Secretary). In addition, approval by the Secretary of the State plan for medical assistance, which incorporated the rate methodologies, was required before the State would be eligible to receive any Federal funds. 42 U.S.C. § 1396a (1976 & Supp. III 1979). The State plan had to meet various conditions as set forth in 42 U.S.C. §§ 1396a(a)(1) et seq.; if the plan conformed, the Secretary, with certain exceptions, had to approve the plan. 42 U.S.C. § 1396a(b).

Under the Massachusetts regulatory structure, the commission establishes rates for payment to Medicaid providers, which include hospitals, G. L. c. 6A, § 32; the Department of Public Welfare (DPW) sees that the program is administered in accordance with Federal law. See G. L. c. 118E, §§ 4, 6. The contested amended regulation, 114.1 Code Mass. Regs. § 3.06, was to be effective February 1, 1981. It changed the method by which the Commonwealth, under the Medicaid program, reimbursed the hospitals for patients who were on "administratively necessary day" (AND) status. An AND is a day that a Medicaid patient occupies an acute care hospital bed pending transfer to a different facility after a Professional Standards Review Organization has determined that the patient is no longer ill enough to require hospitalization in the acute care facility. See 106 Code Mass. Regs. § 452.007 (1978). The patient requires only those medical services that can be administered in a lower level facility, such as a nursing home, but often no beds in such facilities are available. Hence, the acute care hospital continues to care for the patient and is reimbursed at the AND rate. The AND rate promulgated by the commission in 114.1 Code Mass. Regs. § 3.06 contemplated reimbursement from February 1, 1981, at a flat rate

of $70, representing the average rate for care rendered in skilled nursing facilities based in hospitals.[6] This amended regulation was promulgated without prior approval by the Secretary because the DPW's position was that such prior approval was not required. The Secretary disagreed.

While this case was pending in the Superior Court, we were called on to give our views as to whether prior approval by the Secretary of the amended regulation was required under Federal law as it existed in February, 1981. In *Addison Gilbert Hosp.* v. *Rate Setting Comm' n,* 390 Mass. 17, 21 (1983), we held that, under the former statute, 42 U.S.C. § 1396a(a)(13) (D), the disputed regulation was invalid for the period February 1, 1981, to August 13, 1981, for lack of approval by the Secretary. We did not reach the question of the validity of the amended regulation subsequent to August 13, 1981 (the date the Federal statute was changed), as that issue was not before us. In this case, the motion judge, following the court's suggestion in *Addison Gilbert,* ordered damages for the period February 1, 1981, to August 13, 1981, to be set by determining the difference between the reimbursement rate of the amended regulation ($70 an AND) and the previous rate reimbursement formula. The commission does not challenge the judgment as it pertains to the period February 1, 1981, to August 13, 1981.

The commission contends that its failure to obtain Federal approval of the contested AND rate under the previous Federal statute does not render the rate invalid from August 13, 1981, until a new system of hospital payment was instituted as of October 1, 1982. See St. 1982, c. 372. Prior to August 13, 1981, Federal law stated that a State plan for medical assistance must provide "for payment of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards, . . . which shall be developed by the State and reviewed and approved by the Sec-

---

[6] Prior to the promulgation of the disputed regulation, hospitals were paid for ANDs at the so called "routine rate," the average cost of routine care, i.e., bed, board, and nursing care, in a hospital. The routine rate in 1981 was $151.66 a day for New England Memorial Hospital and $131.37 a day for Quincy City Hospital.

retary and (after notice of approval by the Secretary) included in the plan." 42 U.S.C. § 1396a(a)(13)(D) (1976 & Supp. III 1979).

On August 13, 1981, the section governing hospital reimbursement was replaced by a new section which required, in pertinent part, that a State plan for medical reimbursement must provide "for payment . . . of the hospital . . . services provided under the plan through the use of rates . . . which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A), as amended by § 2173(a)(1) of the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, 95 Stat. 357, 808 (1981). The commission argues that this change in Federal law eliminated any requirement of prior approval by the Secretary. While this is true, it is irrelevant to this appeal for the reason, as we explain, that the new Federal law substituted one process of Federal regulation for another, albeit more flexible, form of Federal regulation, and the defendant failed to comply with the new requirements.

The legislative history indicates that the 1981 Federal amendment was intended to reduce the Secretary's regulatory role and to give the States greater flexibility in developing methods of payment. S. Rep. No. 139, 97th Cong., 1st Sess. 478, reprinted in 1981 U.S. Code Cong. & Ad. News 396, 744.[7]

---

[7] Prior to 1980, skilled nursing facilities were reimbursed on a reasonable cost basis. See 42 U.S.C. § 1396a(a)(13)(E) (Supp. III 1979). Effective October 1, 1980, 42 U.S.C. § 1396a(a)(13)(E) was revised to require reimbursement on the basis of "costs which must be incurred by efficiently and economically operated facilities" and a requirement that States submit "assurances, satisfactory to the Secretary" that their rates met the statutory standard was added. See Omnibus Reconciliation Act of 1980, Pub. L. No. 96-499, § 962, 94 Stat. 2599, 2650-2651 (1980). In 1981, this new standard (known as the Boren Amendment) was expanded to include hospitals under the Omnibus Budget Reconciliation Act of 1981, Pub. L. No. 97-35, § 2173(a)(1), 95 Stat. 357, 808 (1981). Section 1396a(a)(13)(E) was redesignated § 1396a(a)(13)(A). While the Boren Amendment reflects a desire to reduce Secretarial oversight and paperwork, it also assumes that the Secretary retains "final authority to review the rates and to disapprove those

Nevertheless, by its own terms, the statute still requires that participating States provide assurances to the Secretary, and that the Secretary find these satisfactory.

The regulations promulgated by the Secretary, which implement the foregoing requirements as they were in effect in 1981, provide that the Medicaid agency must submit assurances "whenever the agency wishes to make a significant change in its methods and standards for determining the rate." 42 C.F.R. § 447.255(a) (1981). The agency must assure in part that (1) rates are reasonable and adequate to meet the costs of an efficient and economically operated provider, (2) rates are adequate to assure recipients access to inpatient hospital services of adequate quality, (3) the agency has made findings of (1) and (2) above, and (4) there is a provision for uniform cost reporting and periodic audits. 42 C.F.R. § 447.252(c) (1981). In addition to the assurances, the agency must submit detailed information concerning the impact of any changes on different types of services. 42 C.F.R. § 447.255(b) (1981). The Secretary has sixty days in which to act on these assurances, but, if no action is taken within that time period, the assurances are deemed to be accepted. 42 C.F.R. § 447.256(a) (1981). A proposed change is effective on the date specified by the State agency in its assurances submitted to the Secretary, but in no event earlier than the first day of the calendar quarter in which the assurances are submitted. 42 C.F.R. § 447.256(b) (1981).[8]

The judge found that the Department of Public Welfare never filed the formal "assurances and related information" required by the new Federal statute. The commission does not dispute

---

rates if they do not meet the requirements of the statute." H. Conf. Rep. No. 96-1479, 96th Cong., 2d Sess. 154, reprinted in 1980 U.S. Code Cong. & Ad. News 5903, 5944. For discussion of the change in Federal Medicaid law wrought by the Boren Amendment, see *Nebraska Health Care Ass'n v. Dunning,* 575 F. Supp. 176, 178-179 (D. Neb. 1983).

[8] After devising the disputed rate, the commission developed another methodology for rate setting to be effective October 1, 1982. The Secretary signified satisfaction with the assurances as to this methodology on July 15, 1982; this new methodology was superseded, however, by St. 1982, c. 372.

this finding but argues, without citation of authority, that it was in "substantial compliance" with the new requirement of filing "assurances and related information." We hold the commission's argument that it substantially complied with the regulations to be without merit. Our reading of the record, in particular the letter of October 28, 1981, from the Associate Regional Administrator, Division of Financial Operations, Health Care Financing Administration, United States Department of Health and Human Services, indicates that approval of the AND rate was conditioned on the submission of assurances and related information. These were never submitted; 42 U.S.C. § 1396a(a)(13)(A) clearly requires that Medicaid agencies submit assurances for the Secretary's approval. The implementing regulations require such assurances in addition to requiring related information. The commission's failure to comply with the applicable statutory and regulatory scheme renders the disputed amended regulation invalid. The commission's failure to comply with these requirements defeated the purposes of the new Federal law.

We turn now to the question of remedy. The commission has suggested, should we agree with the judge's conclusion on liability, that it now establish a new rate, meeting Federal criteria, for the period August 13, 1981, to October 1, 1982. Such an approach presents serious problems with respect to the current Federal statute discussed above and the regulations now in effect. Any substitute regulation promulgated by the commission would be subject to the assurances requirement of 42 U.S.C. § 1396a(a)(13)(A). More important, 42 C.F.R. § 447.256(c) (1983) limits the retroactive effect of a rate to the first day of the calendar quarter in which the agency submits assurances and related information. Thus, it would appear that this remedy is precluded by Federal law.

The commission argues that continued use of the routine rate effective on January 31, 1981, would violate current Federal and State law. First, it contends that the routine rate fails to meet the provision of § 1396a(a)(13)(A) that payment must be made through the use of rates "which the State *finds* . . . are reasonable and adequate to meet the costs which must be

incurred by efficiently and economically operated facilities" (emphasis supplied). The routine rates were never formally "found" by the State to meet the "efficient cost" standard of § 1396a(a)(13)(A). Under the former statute, § 1396a(a)(13) (D), the Secretary, however, did approve the routine rate as meeting the higher "reasonable cost" standard. "Because the new 'efficient cost' standard is designed to lower the threshold of permissible reimbursement rates,[ ] rates properly approved under the reasonable cost standard will satisfy the new efficient cost standard." *Alabama Hosp. Ass'n* v. *Beasley,* 702 F.2d 955, 958 (11th Cir. 1983).[9]

The commission argues that the routine rate fails to satisfy another provision of § 1396a(a)(13)(A): That rates provide, for AND patients, "for lower reimbursement rates reflecting the level of care actually received (in a manner consistent with section 1395x(v)(1)(G) of [Title 42])." Section 1395x(v)(1)(G) (ii)(I) of 42 U.S.C. (a Medicare provision) provides that the rate for AND patients shall be the "State-wide average rate per patient-day paid for services provided in skilled nursing facilities." The commission contends that the routine rate, based on the average cost of routine care in a hospital, is not consistent with the Medicare standard because it is unrelated to the Statewide average cost of care in nursing facilities.

The language of § 1396a(a)(13)(A) requires only "consistency" with the Medicare provision, not strict conformity. Moreover, the 1981 amendment reflects an effort to establish an AND rate which is lower than the acute care hospital rate, since prior to the 1981 amendments there was no Federal provision for a separate AND rate for Medicaid recipients. The routine rate, based on routine costs only (see note 6, *supra*), is lower than the usual acute care hospital rate and thus fulfils

---

[9] We find unfounded the commission's reliance on the "outside sections" of the 1980, 1981, and 1982 budgets. St. 1980, c. 329, § 82. St. 1981, c. 351, § 35. St. 1982, c. 191, § 14. "We need not and do not answer the question whether such separable provisions may properly be included in a budget bill in the first instance." *Opinion of the Justices,* 384 Mass. 820, 826 (1981). The sections merely reflect a desire that ANDs be reimbursed at an appropriate rate to be set by the commission in accordance with Federal and State law. These sections add nothing to the commission's case.

the statutory mandate. See 114.1 Code Mass. Regs. §§ 3.06, 3.07 (1979).[10] Accordingly, use of the routine rate does not violate Federal law.

As to State law, the remedy is clear. In *Addison Gilbert Hosp.* v. *Rate Setting Comm'n*, 390 Mass. 17, 26-27 n.13 (1983), we stated: "Since the issue of the appropriate rate of reimbursement for the administratively necessary day patients has not yet been heard, and was not reported to us, we merely note that in an analogous New York case, the defendants were 'directed to recalculate the amounts owed to members of the plaintiff class under the previously approved reimbursement formula, and to pay the hospitals any additional money that was owing.' *Hospital Ass'n of N.Y. State, Inc.* v. *Toia*, 577 F.2d 790, 793 (2d Cir. 1978), referring to *Hospital Ass'n* v. *Toia,* Medicare & Medicaid Guide (CCH) par. 27,941 (S.D.N.Y. 1976)." The motion judge ordered this formula to be adopted. This ruling is consistent with *Addison Gilbert* and our prior cases. Where no effective new rate has been established, the old rate remains in effect. See *Massachusetts Gen. Hosp.* v. *Commissioner of Admin.,* 353 Mass. 369, 375-376 (1967). See also *Senn Park Nursing Center* v. *Miller,* 118 Ill. App. 3d 733 (1983).[11]

Accordingly, the judgment entered is to be modified to declare that the plaintiffs are entitled to reimbursement for the period commencing August 13, 1981, to October 1, 1982, on the basis of the difference between the $70 a day AND rate declared invalid and the routine care rate effective as of January 31, 1981, as though the latter rate remained in effect for the period in dispute. No "new" rate for this period need be promul-

---

[10] We note that the commission submitted to the Secretary assurances that a later proposed AND rate, made on a hospital-specific basis at rates derived from each hospital's routine per diem costs, conformed with Federal requirements. The Secretary found those assurances acceptable.

[11] We find the commission's argument, that the remedy is unsupported by evidence of injury, to be without merit. This contention is merely another attempt to set forth the commission's substantial compliance theory, which we have rejected.

gated by the commission. As modified, the partial summary judgment is affirmed. The matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*