QUINCY CITY HOSPITAL & others[1] *vs.* RATE SETTING
COMMISSION & others[2]

(and a consolidated case[3] ).

Suffolk. October 2, 1989. - January 16, 1990.

Present: LIACOS, C.J., NOLAN, LYNCH, & GREANEY, JJ.

*Medicaid. Rate Setting Commission. Hospital,* Medicaid reimbursement.
*Jurisdiction,* Declaratory relief. *Practice, Civil,* Declaratory proceed-
ing. *Statute,* Construction. *Words,* "Appeal."

In a proceeding by hospitals challenging the Rate Setting Commission's
assessment of their Medicaid reimbursements for fiscal years 1983 to
1985, the plaintiffs were not entitled to a declaration as to the validity
of St. 1985, c. 200, § 3, which fixed at $70 per day the reimbursement
for care administered during "administratively necessary days," where
the challenged statute was no longer in effect, and where, in view of
this court's construction of the statutory scheme controlling Medicaid
payments for the fiscal years in question, such a declaration would have
no impact on the plaintiffs' rights. [439-440]

In St. 1982, c. 372, § 1B, which established the scheme controlling Medi-
caid reimbursements to hospitals for the fiscal years 1983 through
1985, language providing for adjustment of the Medicaid payment ratio
to reflect changes in the 1982 per day rates "which result from final
disposition of . . . appeals of rates to the division of hearing officers or
the courts" contemplated only those adjustments resulting from individ-
ual provider appeals under G. L. c. 6A, § 36, and not those changes
wrought by generalized declaratory judgment challenges such as *New
England Memorial Hosp.* v. *Rate Setting Comm'n,* 394 Mass. 296
(1985). [440-448]

---

[1]Norwood Hospital, Cape Cod Hospital, Beverly Hospital, and New
England Memorial Hospital.

[2]Commissioner of the Department of Public Welfare, and the
Commonwealth.

[3]Anna Jaques Hospital & others *vs.* Rate Setting Commission & others.

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on October 21, 1985, and April 17, 1986, respectively.

The cases were reported by *Lynch*, J.

*Mitchell H. Kaplan* for Anna Jaques Hospital & others.

*Richard A. Johnston* (*Peter T. Wechsler* with him) for Quincy City Hospital & others.

*Douglas H. Wilkins*, Assistant Attorney General, for the defendants.

*Richard P. Ward & Robert B. Gordon*, for Brockton Hospital, Inc., & others, amici curiae, submitted a brief.

LYNCH, J. The plaintiffs (hospitals) in these two cases challenge the Rate Setting Commission's (commission's) assessment of the Medicaid reimbursement to which they are entitled for fiscal years 1983 through 1985.[4] Specifically, they attack the commission's use of a $70 per day rate for one component of the reimbursement formula in the now-superseded State statute, St. 1982, c. 372, controlling Medicaid payments in fiscal years 1983 through 1985. The State regulation setting the $70 per day rate was invalidated for 1982 when it was reviewed by this court under the standards of a different Federal Medicaid scheme in place before, and inapplicable to, c. 372's enactment. *New England Memorial Hosp.* v. *Rate Setting Comm'n*, 394 Mass. 296 (1985). Because the c. 372 formula incorporated 1982 rates as its starting point, the hospitals assert the commission was obliged to recalculate their Medicaid reimbursement for fiscal years 1983 through 1985 to reflect the much higher "routine care rates" ordered for 1982 by this court. They allege that the Legislature's amendment of c. 372, four months after the *New England Memorial Hosp.* decision, expressly to require use of the $70 per day figure for 1983 through 1985, was a procedurally defective and unconstitutional attempt to deprive the hospitals of a substantial portion of Medicaid payments due them for those years.

---

[4]The fiscal years here began October 1 and ran through September 30.

In October, 1985, and April, 1986, the hospitals filed these separate actions for declaratory and injunctive relief under G. L. c. 30A, § 7, and c. 231A in the Supreme Judicial Court for Suffolk County. They seek a declaration that St. 1985, c. 200, § 3 (amending G. L. c. 6A, § 68, the codification of St. 1982, c. 372) is invalid, and request an order that the "routine care" rate, rather than seventy dollars, be used to compute the relevant portion of their final Medicaid reimbursement rates for 1983 through 1985. The single justice granted joint motions to consolidate, and to reserve and report these cases here, on a stipulation of facts by the parties. Because of the view we take of these cases, we do not construe St. 1985, c. 200, § 3, and declare that the hospitals are not entitled to the relief they seek.

A review of the long and complicated history of this Medicaid reimbursement rate controversy is necessary to understand the ultimate conclusion we reach on the hospitals' claims. We draw the following summary from the parties' stipulations and their record appendices, prior court decisions, and legislative history. Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 et seq. (1983), offers States the option of participating in the cooperative Federal-State program commonly called "Medicaid," aimed at providing, "as far as practicable under the conditions in such State," payment for "necessary medical services" to the poor. 42 U.S.C. § 1396. If a State chooses to participate, it must submit to the Secretary of Health and Human Services (secretary) a "State plan" for medical assistance that comports with Federal statutory and regulatory requirements. *Id.* See 42 U.S.C. § 1396a(a), and 42 C.F.R. §§ 430, 10-430.16, and 447.252-256 (1988). Before August, 1981, the reimbursement rates in a State plan could not be implemented without the prior approval of the secretary. Since the overhaul of Title XIX's Medicaid provisions by the Omnibus Budget Reconciliation Acts of 1980, Pub. L. No. 96-499, § 902, 94 Stat. 2599, 2613 (1980), and 1981, Pub. L. No. 97-35, § 2173(a)(1), 95 Stat. 357, 808 (1981) (commonly referred to as the Boren Amendment), however, the Federal oversight

requirement has been reduced. As a result, a State need only "find and make assurances satisfactory to the secretary" that the plan's rates reasonably reimburse costs of efficiently run providers to allow them to satisfy Federal Medicaid standards of care. 42 U.S.C. § 1396a(a)(13)(A).

Massachusetts participates in the Medicaid program through a two-pronged regulatory apparatus. The commission is responsible for setting the reimbursement rates for Medicaid providers, such as the plaintiff hospitals, under G. L. c. 6A, § 32 (1988 ed.). The Department of Public Welfare (department) is charged with administering the program itself, under G. L. c. 118E, §§ 3, 4, & 6 (1988 ed.), and making sure the Commonwealth continues to comply with the relevant Federal Medicaid rules, as they are routinely revised by Congress and the United States Department of Health and Human Services (HHS).

In February, 1981, the commission put into effect a regulation setting seventy dollars as the daily reimbursement rate for care administered by Commonwealth hospitals to Medicaid patients during "administratively necessary days" (AND).[5] The $70 per AND rate represented the mean daily costs to a skilled nursing facility in a hospital, incurred in caring for patients of equivalent needs to those in acute-care hospitals on AND status. A companion regulation permitted hospitals to apply for an administrative adjustment to raise their AND reimbursement rate from seventy dollars to their "routine rate" if they could demonstrate "extreme difficulty"

[5]"Administratively necessary days" (AND) is the term given to the extra days during which Medicaid patients continue to occupy acute-care hospital beds after an administrative determination that their condition has so improved as more appropriately to require care in facilities such as nursing homes. Because of frequent unavailability of beds at these facilities, however, acute-care hospitals continue to treat these Medicaid patients until transfer to a nursing home is possible.

The regulation setting the rate for AND was codified at 114.1 Code Mass. Regs. § 3.06 (1981). The entire regulatory scheme of which § 3.06 was a part has been superseded. Currently, 114.1 Code Mass. Regs. §§ 25.08 et seq. (1986) covers Medicaid reimbursement rates.

in placing AND patients in nursing homes.[6] Prior to the February, 1981, regulation, hospitals were reimbursed for AND at their "routine rate," meaning the average costs of providing all patients the "routine" portion of their hospital care (i.e., bed, board, and nursing services), as determined by the commission. The average "routine rate" among the plaintiff hospitals was $150 per day for fiscal year 1982.

The pre-Boren Amendment Federal statutory requirements for State Medicaid plans in effect at the time required that "inpatient hospital service" rates had to reimburse providers for their "reasonable costs" of rendering such services, according to a methodology that received the approval of the secretary before being implemented. 42 U.S.C. § 1396a(a)(13)(D) (repealed, effective August, 1981). While reserving its right to contest the HHS's position that the department's regulation on AND required prior Federal approval, the department submitted the regulation, as a proposed amendment to the Commonwealth's Medicaid plan, to the HSS's regional Medicaid director. In April, 1981, the Federal official denied approval of the department's $70 per AND rate on the ground that it did not reimburse providers for "reasonable costs" of hospital services. The department went ahead and implemented the $70 per AND rate regulation. In a declaratory judgment action brought by some twenty-five hospitals throughout the Commonwealth, this court decided that the department should have obtained prior Federal approval in order to implement an AND rate change, and thus the department's regulation was invalid for the period February 1, 1981, through August 13, 1981, when the Boren Amendment's major changes to the Federal Medi-

[6]Section 3.14(l) of 114.1 Code Mass. Regs. (1981) authorized the administrative adjustment mechanism. The department would actually determine whether a hospital met the "extreme difficulty" standard under 106 Code Mass. Regs. 452.007(E) (1981). To qualify, a hospital had to show (a) it had an AND occupancy rate of five per cent or higher and an overall medical/surgical bed occupancy rate (minus AND) of eighty per cent or higher (eighty-five per cent for teaching hospitals) or (b) it was located on an island. In addition, the hospital had to prove it had taken sufficient steps to better plan patient discharge.

caid rules took effect. *Addison Gilbert Hosp.* v. *Rate Setting Comm'n*, 390 Mass. 17 (1983).

A second declaratory judgment action attacking the department's AND rate resulted in our invalidation of the AND regulation for the remainder of fiscal year 1982 as well. In *New England Memorial Hosp.* v. *Rate Setting Comm'n*, 394 Mass. 296 (1985), we declared the regulation invalid from the period after August 13, 1981 (and the effective date of the Boren Amendment), until October 1, 1982, when the Commonwealth's comprehensive new system of hospital Medicaid reimbursements — established by St. 1982, c. 372 — was to be instituted. That decision was based on the conclusion that, even under the less demanding Federal oversight rules of the Boren Amendment, the Commonwealth had failed to meet the applicable procedural requirement, since it had not filed "assurances" with the secretary that the $70 per AND rate, with opportunity for administrative adjustment, reasonably reimbursed the costs of "efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A). We then declared that for fiscal year 1982 the hospitals were entitled to AND reimbursement at the "routine rate" that predated the defective $70 per AND regulation.

In 1982, before this court decided either *Addison Gilbert* or *New England Memorial Hosp.*, St. 1982, c. 372, was enacted. This statute, "the culmination of a long and difficult negotiation process between the State Administration and the hospital industry, the medical profession, Blue Cross, the private insurance industry, and the business commmunity," revamped the entire hospital reimbursement system in the Commonwealth, and represented "a mutual concern about the unacceptably high level of hospital costs in Massachusetts," in the words of the department, a characterization echoed by the hospitals.[7] With these words, the department

---

[7]The other main purpose of St. 1982, c. 372, was to rationalize and unite, under one universal reimbursement methodology, the previous diverse and often discordant bases for payment of hospital services in the

opened its August, 1982, application to the secretary seeking approval of the new Massachusetts Medicaid reimbursement plan as an experimental project to enhance "incentives for economy while maintaining or improving quality in provision of health services." 42 U.S.C. § 1395b-1 (1983). Such experimental reimbursement projects could be granted a waiver from meeting Title XIX requirements "relat[ing] to reimbursement on the basis of reasonable cost." *Id.* at § 1395b-1(b). In September, 1982, the St. 1982, c. 372, reimbursement scheme received both the secretary's approval, and a § 1395b-1(b) waiver for fiscal years 1983, 1984, and 1985.[8]

The HHS's approval letter informed the Commonwealth that the waiver was for the "hospital reimbursement system according to your request and attachments . . . and revised 'project narrative' . . . ." The formula in c. 372, as explained in those attachments and narratives, preserved the traditional discount for Medicaid service payments in the calculation of a "Medicaid payment ratio." The Medicaid payment ratio was derived from a formula dependent on 1982 Medicaid rates. In both the waiver request and the narrative, the department consistently used a $70 per day reimbursement rate for the AND component of the Medicaid payment ratio. Statute 1982, c. 372, § 1B, added the following refinement on the Medicaid payment ratio's derivation:

> The medicaid payment ratio as calculated "shall be adjusted to reflect changes in fiscal year nineteen hundred

Commonwealth. The discussion of c. 372 here will be limited to its role in radically redesigning the calculation of Medicaid reimbursement rates.

[8]The department's application was coordinated with, and drew on the description contained in the Massachusetts Hospital Association's (MHA's) application to qualify c. 372 as an experimental reimbursement project for Medicare, and to ask for a waiver from Federal Medicare requirements to allow the hospitals to participate. The MHA, a nonprofit corporation including some 160 hospitals as members, serves as a clearinghouse for information for its member hospitals, and among other things conducts litigation on behalf of its member hospitals. The Medicare waiver was granted at the same time and on the same terms as the department's waiver for c. 372 from Medicaid rules.

and eighty-two medicaid per diem rates or outpatient rates which result from final disposition of administrative adjustments, audit adjustments, or *appeals of rates to the division of hearing officers or the courts . . . "* (emphasis supplied).

For the 1982 reimbursement year, of the 110 hospitals providing services to Medicaid patients on AND status, fifty sought administrative adjustments, and twenty — but none of the hospitals in these cases — received them. In 1984, five of the plaintiff hospitals[9] individually appealed to the Division of Administrative Law Appeals (division),[10] under G. L. c. 6A, § 36, the application to the rate calculation, in their particular circumstances, of the $70 per AND reimbursement rate. In 1985, the division ordered in each case that the department use "routine rates" for the AND component, and not seventy dollars, in computing these hospitals' Medicaid payment ratio. The department has appealed all five decisions to the Superior Court; those proceedings have been stayed pending our decision in this case. None of the other plaintiffs in these cases invoked the G. L. c. 6A, § 36, appeal process in regard to the calculation of their appropriate Medicaid reimbursements for fiscal years 1983 through 1985.

In July, 1985, after this court decided *Addison Gilbert* and *New England Memorial Hosp.*, the General Court enacted St. 1985, c. 200, § 3, amending G. L. c. 6A, § 68, as inserted by St. 1982, c. 372, to require the commission to use a seventy-dollar figure for the AND portion of a hospital's Medicaid payment ratio.[11] It is that amendment that is the focus of the plaintiff hospitals' declaratory judgment actions.

---

[9]Noble Hospital, Providence Hospital, Salem Hospital, Somerville Hospital, and Worcester Memorial Hospital.

[10]The Division of Administrative Law Appeals replaced the Division of Hearing Officers in 1983. See G. L. c. 7, § 4H, as amended by St. 1983, c. 683.

[11]In relevant part, St. 1985, c. 200, § 3, stated: "[T]he medicaid payment ratio for each year subsequent to fiscal year nineteen hundred eighty-two shall be calculated using an administratively necessary day rate of

1. *Declaratory judgment act requirements.* For reasons explained below, we view St. 1985, c. 200, § 3, as having no effect on the parties' respective rights. Declaratory judgment is a vehicle for resolving actual, not hypothetical, controversies, with the declaration issued intending to have an immediate impact on the rights of the parties. *Massachusetts Ass'n of Indep. Ins. Agents & Brokers* v. *Commissioner of Ins.*, 373 Mass. 290, 292 (1977). This rule for avoiding issuance of abstract legal opinions applies with special force where judgment is sought on the constitutionality of a statute, as is partially the case with the hospitals' challenge to c. 200, § 3. *Cole* v. *Chief of Police of Fall River*, 312 Mass. 523, 526, appeal dismissed sub nom. *Cole* v. *Violette*, 319 U.S. 581 (1942). Finally, because c. 200, § 3, is no longer in effect (see St. 1988, c. 23, § 15), we do not have in this case the possibility of repetitive problems in future litigation. *Assessors of Edgartown* v. *Commissioner of Revenue*, 379 Mass. 841, 844 (1980). Therefore, we decline to declare the rights of the parties under St. 1985, c. 200, § 3.

However, the declaratory judgment statute is to be construed and applied liberally to afford relief from uncertainty with respect to rights in issue. *Jacobson* v. *Parks & Recreation Comm'n*, 345 Mass. 641, 645 (1963). Thus, the hospitals are entitled to a binding declaration regarding those rights, even if they have not qualified for the particular declaration they expressly seek under G. L. c. 231A. *Building Inspector of Falmouth* v. *Haddad*, 369 Mass. 452, 461 (1976). Although the hospitals in these cases have not sought a declaration of their rights under St. 1982, c. 372, itself, they assert an assumption about those rights, which the defendants contest. Because construction of c. 372 would resolve the dispute among every possible party affected by the now superseded statute, we treat these actions as raising that

seventy dollars per administratively necessary day patient per day, unless such rate for fiscal year nineteen hundred and eighty-two is adjusted based on a specific finding that in fiscal year nineteen hundred and eighty-two an individual hospital met the criteria for an administrative adjustment set forth by [114.1 Code Mass. Regs. § 3.14(b)]."

issue, and settle the matter on that ground. See *Zaltman v. Daris*, 331 Mass. 458, 462 (1954).

2. *The meaning of St. 1982, c. 372.* The hospitals assume, in attacking St. 1985, c. 200, § 3, that St. 1982, c. 372, entitled them to a recalculation of their fiscal years 1983, 1984, and 1985 Medicaid reimbursement rates, as a result of our decision in *New England Memorial Hosp. v. Rate Setting Comm'n*, 394 Mass. 296 (1985). Because that decision invalidated the department's $70 per AND rate regulation for fiscal year 1982 and substituted in its place for that year a "routine rate" on average more than double the seventy dollars, and because the c. 372 formula is based on 1982 Medicaid rates, as adjusted for certain appeals, the hospitals assert that c. 372 requires the "routine rate" for AND be used in recomputing their 1983-1985 Medicaid rates. We disagree.

The crux of the parties' divergent interpretations of St. 1982, c. 372, is the language pertaining to the adjustment of the Medicaid payment ratio for changes in 1982 Medicaid per day rates "which result from final disposition of administrative adjustments, audit adjustments, or *appeals of rates to the division of hearing officers or the courts*" (emphasis supplied). The hospitals contend that this language unambiguously includes changes wrought by class action declaratory judgment challenges on general grounds, to a 1982 rate regulation of general application, such as the *New England Memorial Hosp.* decision. Because it is unambiguous, they assert, we are foreclosed from engaging any of the tools of statutory construction that might challenge this interpretation. While a superficial reading of the statute might lead to that conclusion, the preexisting legal distinction between individual provider appeals of the commission's rates, through the c. 6A appeal process, and broad-based challenges to those rates, which may *not* be brought through the appeal process, creates a question of statutory interpretation.

This court has long viewed as separate and very different actions (1) an individual hospital's appeal, based on application to its own situation, of reimbursement rates, and (2) a

challenge to the propriety, in general, of a commission regulation of general application. See *Palm Manor Nursing Home, Inc.* v. *Rate Setting Comm'n*, 359 Mass. 652, 654-655 (1971); *Massachusetts Gen. Hosp.* v. *Rate Setting Comm'n*, 359 Mass. 157, 166 (1971). Because the process for "filing an appeal" for "administrative and judicial review of rates established . . . by the commission," did not apply to the second category of case, see c. 6A, § 36,[12] this court designated the declaratory judgment act as the sole vehicle for such challenges. *Massachusetts State Pharmaceutical Ass'n* v. *Rate Setting Comm'n*, 387 Mass. 122, 135 (1982). *Massachusetts Gen. Hosp.* v. *Rate Setting Comm'n*, supra. "[W]hen a provider challenges a class-based rate . . . . the provider properly may appeal that rate to the division only if the provider can demonstrate circumstances — other than voluntary business decisions — which make application of the rate to that provider different from its application to all other providers in the class." *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Comm'n*, 401 Mass. 357, 364 n.9 (1987). But an appeal brought to the division "may not concern alleged defects in a regulation . . . [These] claims may be pursued only in a declaratory judgment action." *Rate Setting Comm'n* v. *Division of Hearings Officers*, 401 Mass. 542, 547 (1988). Finally, no matter how the attack on the rate is framed, in no case can a class action be brought to appeal a

---

[12]General Laws c. 6A, § 36 (1988 ed.), provides, in pertinent part: "Any person, corporation or other party aggrieved by an interim rate or a final rate established by the commission, or by failure of the commission to set a rate or to take other action required by law and desiring a review thereof shall, within thirty days after said rate is filed with the state secretary . . . file an appeal with [division] . . . On appeal, the rate determined for any provider of services shall be adequate, fair and reasonable for such provider, based, among other things, on the costs of such provider . . .

"Any party aggrieved by a decision of the commission may, within thirty days of the receipt of such decision, file a petition for review in superior court . . .

"A provider may appeal as an aggrieved party in accordance with the provisions of the preceding sentence in the event that a remand by the commission to a hearing officer does not result in a final decision by the commission within twenty-one days of the remand."

rate under G. L. c. 6A, § 36. *Massachusetts State Pharmaceutical Ass'n* v. *Rate Setting Comm'n, supra* at 138. Therefore, the declaratory judgment action of *New England Memorial Hosp.* challenging the $70 per AND rate regulation for lack of prior Federal approval under then applicable Federal Medicaid rules, clearly could not have been brought as an appeal under c. 6A, § 36.

This distinction in the law governing parties aggrieved by the commission's actions in setting rates raises an ambiguity on the face of the statute as to the meaning of the word "appeal" in c. 372. While the line between commission decisions that may be appealed and actions that may not, may have become clearer in the years since St. 1982, c. 372, was adopted, as the hospitals suggest, see *Rate Setting Comm'n* v. *Division of Hearings Officers, supra; Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Comm'n, supra,* the distinction existed for at least ten years prior to the statute's enactment. Nor do we think the use of the disjunctive "or" between "appeals of rates to the division . . . *or* the court," instead of "and," eliminates the ambiguity. A division decision on a plaintiff's rate can be appealed under G. L. c. 6A, § 36, to the courts, and adjudicators at both forums would be empowered to adjust a rate in accordance with their decisions. Thus, it is possible to emerge with an adjustment to a Medicaid rate after an "appeal . . . to the courts" different from that which resulted from an appeal to the division.

In order to construe c. 372's provision for circumstances requiring adjustment of the 1982 Medicaid rates serving as the numerator in the 1983, 1984, and 1985 formula for Medicaid payment ratios, we look first to other language of the statutory plan within which this provision appears, and the legislative purpose behind that plan. *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n,* 394 Mass. 233, 240 (1985). Our task is to consider the clause at issue in light of the aims and remedies intended to be advanced by the Legislature and as evidenced by other parts of the statute as well. *Saccone* v. *State Ethics Comm'n,* 395 Mass. 326, 328 (1985).

Statute 1982, c. 372, § 9, defined the remedy of any hospital seeking review of the commission's actions in connection with c. 372 to be an "appeal" under G. L. c. 6A, § 36. Furthermore, as we have noted above, c. 372 was a comprehensive revision of the method used for computing Medicaid reimbursement rates. It made substantial changes to G. L. c. 6A which regulates appeals from such rate determinations. Because a general term in a statute takes its meaning from the setting in which it is employed, we are led to the conclusion that the word "appeal" was used in St. 1982, c. 372, § 1B, in the same sense as in G. L. c. 6A, § 36. See *Commissioner of Corps. & Taxation v. Chilton Club*, 318 Mass. 285, 288 (1945).

Such a meaning must be adopted if matters which might come within the letter of the enactment do not fairly come within its spirit and intent. *Hogerney v. Baker*, 324 Mass. 703, 706 (1949). Statutes are to be interpreted not based solely on simple, strict meaning of words, but in connection with their development and history, and with the history of the times and prior legislation. *Oxford v. Oxford Water Co.*, 391 Mass. 581, 588 (1984). *Murphy v. Bohn*, 377 Mass. 544, 548 (1979). Because construction of the provision in St. 1982, c. 372, § 1B, for "appeals" of the 1982 Medicaid rates to mandate recalculation of 1983 through 1985 reimbursement rates on the basis of *New England Memorial Hosp.* would contradict the purposes of c. 372, we believe the narrower interpretation of "appeal" is required.

Chapter 372 was enacted as emergency legislation which would "immediately provide for the establishment of hospital rates." As the parties acknowledge, it was the product of a long negotiation process, bringing together the Commonwealth and the hospital service and insurance providing industries. In general, Federal Medicaid law, before and after the Boren Amendment changes, gives the States broad discretion in cost-finding and rate-setting, policy-making decisions that shape their particular plans. *Addison Gilbert*, *supra* at 24. *Haven Home, Inc. v. Department of Pub. Wel-*

*fare*, 216 Neb. 731 (1984). *Illinois Council on Long Term Care* v. *Miller*, 579 F. Supp. 1140, 1142 (N.D. Ill. 1983).

In permitting the approach adopted by c. 372, that discretion was broadened by the Federal authorities. Both the hospitals and the department submitted the c. 372 plan to the appropriate HHS office for review, in the hope that the Federal authorities would approve it as an experimental program qualified for a waiver from requirements relating to reimbursement on the basis of reasonable cost. The Federal statute governing such special projects is set up expressly to encourage States to develop and experiment with reimbursement schemes aimed at containing Medicaid costs. See 42 U.S.C. § 1395b-1. *Georgia Hosp. Ass'n* v. *Department of Medical Assistance*, 528 F. Supp. 1348, 1355 (N.D. Ga. 1982).

In the opening paragraph of its application to HHS for Federal approval and waiver, the department stated: "We believe that participation in the proposed system would reduce the level of future Medicaid hospital expenditures in Massachusetts relative to their expected level in the absence of such a waiver." In a section entitled "Impact on Medicaid Expenditures," the department stated to the Federal authorities: "We expect that, under the proposed system, Medicaid expenditures will be lower than they would have been if we continued to reimburse hospitals using our current methodology. Under the proposed system, Medicaid recognizes no new costs, because the Medicaid payment ratio calculation essentially freezes the Medicaid discount, relative to the basis of payment for the proposed system, at its 1982 level." In conclusion, the department asserted: "We feel strongly that the proposed system is superior to the current system of hospital reimbursement in Massachusetts, not only because of the large expected savings to the Medicaid program, but because of the rationalization of systemwide hospital reimbursement which would result."

HHS approved the c. 372 plan as a cost-containment reimbursement experiment under 42 U.S.C. § 1395b-1, and granted the department and the hospitals the waivers they

sought on the terms of the application and attachments submitted to them. Therefore, we believe it is clear from the history of c. 372's development, the intent of its framers, and the relevant Federal statute under which the State plan received the approval necessary for implementation, *Murphy* v. *Bohn*, 377 Mass. 544 (1979), that c. 372's purpose was to control spiralling Medicaid costs.

The $70 per AND rate was built into the blueprint which the Federal authorities approved for the experimental c. 372 program. In considering a project submitted to it under 42 U.S.C. § 1395b-1, HHS has broad authority to grant waivers to programs, limited only by the requirement that it "must judge the project to be 'likely to assist in promoting the objectives' of the designated parts of the Social Security Act." *Georgia Hosp. Ass'n* v. *Department of Medical Assistance, supra* at 1355, quoting *Aguayo* v. *Richardson*, 473 F.2d 1090, 1105 (2d Cir.), cert. denied, 414 U.S. 1146 (1973). Given this history and intended purpose of c. 372 and the special Medicaid framework within which it fit, we believe it unlikely that the Legislature, aiming to contain Medicaid costs (indeed, "freeze" Medicaid rates to 1982 levels), meant that the word "appeal" in c. 372, be given broad meaning to take in not only appeal of rates under the applicable statutory appeals process, but also declaratory judgment attacks on procedural grounds irrelevant to the special rules for experiments like the c. 372 plan.

The plaintiff hospitals assume that the procedural defects that undermined the $70 per AND rate, as discussed in *Addison Gilbert* and *New England Memorial Hosp.*, render it a nullity, and beyond the right of the commission to revive, no matter what the circumstances. However, these cases specifically invalidated the $70 per AND rate regulation for a particular period: February, 1981, until October, 1982. Implicit in that cut off date is the court's recognition that the department's Medicaid reimbursement scheme was about to be replaced by an entirely different set of rules, for which their reasoning regarding the $70 per AND rate might not apply. See *Amisub (PSL), Inc.* v. *Colorado Dep't of Social Servs.*,

879 F.2d 789 (10th Cir. 1989), in which the Tenth Circuit Court of Appeals invalidated the use of a particular factor in computing a Medicaid reimbursement rate, but added, "in so doing, we do not prohibit the use of [the factor] in the future. This court is mindful of state budgetary constraints and would approve of the application of [the factor] so long as the resulting reimbursement rates complied with controlling federal law."[13] *Id.* at 799.

For, indeed, this court found the $70 per AND rate infirm for a procedural defect totally inapplicable to the new c. 372 scheme in which it now appeared. The department had failed to receive prior Federal approval, under the 42 U.S.C. § 1396a(a)(13)(A), that existed until the Boren Amendment of 1981 (see *Addison Gilbert* v. *Rate Setting Comm'n*, 390 Mass. 17 [1983]), and had failed to make to HHS the adequate assurances of reasonable cost reimbursement required by the post-Boren Amendment version of the same statutory provision (see *New England Memorial Hosp.* v. *Rate Setting Comm'n*, 394 Mass. 296 [1985]). The 42 U.S.C. § 1395b-1 experimental program rules, under which the department received prior Federal approval and waiver for the $70 per AND rate in the materials it submitted to HHS regarding the c. 372 plan, exempted it from meeting the adequate assurance of reasonable cost requirement of § 1396a(a)(13)(A). "In the case of any experiment or demon-

---

[13]The plaintiff hospitals have criticized the $70 per AND rate as having been primarily motivated by the department's desire to control Medicaid costs. It is not our role to weigh or evaluate the political and financial concerns behind the Commonwealth's policy choices. *Mississippi Hosp. Ass'n* v. *Heckler*, 701 F.2d 511, 516 (5th Cir. 1983). *Wilmac Corp.* v. *Heckler*, 633 F. Supp. 1000, 1008 (E.D. Pa. 1986). However, we note that courts have repeatedly said that State budgetary concerns are a legitimate basis for a State's Medicaid plan's policy decisions. *Mississippi Hosp. Ass'n* v. *Heckler, supra* at 518. *Illinois Council on Long Term Care* v. *Miller, supra* at 1147-1148. "The public purse . . . is not absolutely unlimited. Accordingly, public officials must make some effort to provide the greatest good possible at the least possible costs. That appears to be the underlying motive behind this project, and it is one to be commended, and not one to be criticized." *Crane* v. *Mathews*, 417 F. Supp. 532, 540 (N.D. Ga. 1976).

stration project under subsection [a] of this section, the secretary may waive compliance with the requirements of [Federal Medicaid law] insofar as such requirements relate to reimbursement or payment on the basis of reasonable cost . . ." § 1395b-1(b).[14] That the bases for the declaratory judgments in which this court invalidated the $70 per AND rate are (1) inapplicable to its use in the c. 372 scheme, and (2) at odds with the fundamental aims of the department and its Federal partners in the c. 372 plan, adds further weight to a limited construction of "appeal" in the context of c. 372.

Finally, we cannot help but note, as an additional aid to statutory construction, the "history of the times," *Murphy* v. *Bohn, supra* at 548, in which c. 372 was framed, approved and implemented. In enacting the Boren Amendment to the Social Security Act in 1981, "Congress essentially abandoned the 'reasonable cost' reimbursement principles of the old Medicaid Act as inflationary and, in its place, adopted a new anti-inflationary reimbursement standard with the stated

---

[14]The hospitals argue that a waiver under 42 U.S.C. § 1395b-1(b) is very limited in scope, and does not extend to a waiver of such a "procedural" requirement as the "adequate assurances" demanded by § 1396a(a)(13)(A), and 42 C.F.R. § 447.253. However, as the "adequate assurance" requirements are expressly adequate assurances of reasonable cost reimbursement, they are encompassed by § 1395b-1(b)'s waiver from meeting "requirements related to reimbursement or payment on the basis of reasonable cost."

Furthermore, as already noted, the secretary has "extensive authority in granting waivers to experimental State Medicaid plans." See *Georgia Hosp. Ass'n* v. *Department of Medical Assistance,* 528 F. Supp. 1348, 1355 (N.D. Ga. 1982); *Aguayo* v. *Richardson,* 473 F.2d 1090, 1105 (2d. Cir. 1973). The secretary need not comply with requirements that stand in the way of proper exercise of his or her experimental authority. *Blue Cross Ass'n* v. *Califano,* 473 F. Supp. 1047, 1067 (W.D. Mo. 1979), rev'd on other grounds, 622 F.2d 972 (8th Cir. 1980). If the Federal authorites, in granting the department a waiver from meeting reasonable cost requirements so that the department could experiment with a new Medicaid reimbursement methodology, explicitly designed and approved under a Federal provision, intended to contain costs, it would hardly be consistent to simultaneously mandate that the Federal and State partners comply with a requirement that there be "adequate assurance" the rates reasonably meet the costs of providers.

purpose of 'promot[ing] the efficient and economical delivery of [medical] services.'" *Pinnacle Nursing Home* v. *Axelrod*, 719 F. Supp. 1173, 1176 (W.D. N.Y. 1989). "It is clear that in . . . encouraging alternative reimbursement plans in 1972 [through § 1395b-1], in eliminating the reasonable cost standard as applied to nursing homes in 1980 and hospitals in 1981 [the Boren Amendment], and in cutting Medicaid funding in 1981, Congress intended to encourage Medicaid cost containment." *Mississippi Hosp. Ass'n* v. *Heckler*, *supra* at 518. The Boren Amendment "was intended by Congress to reduce the level of reimbursement paid by the states for hospital inpatient services. [The legislative history] reflects a concern for the financial burden facing states participating in the Medicaid program because of hospital cost escalation and the reduction of federal funds." *Charleston Memorial Hosp.* v. *Conrad*, 693 F.2d 324, 331 (4th Cir. 1982). That same legislative history recognized that "the previous requirements of section 1396a(a)(13)(D) [under which *Addison Gilbert* and *New England Memorial Hosp.* struck the $70 per AND rate for 1982] 'result in higher levels of inpatient hospital reimbursement than States might set if granted more flexibility.'" *Id.*, quoting H. Rep. No. 158, 97th Cong., 1st Sess.

Since St. 1982, c. 372, was drafted and enacted at the very time this major shift in Federal Medicaid policy was occurring, we do not believe the Legislature was unmindful of it. In addition, c. 372 had an express waiver, for Federally-approved, cost-cutting experiments, from meeting the even looser requirements wrought by the Boren Amendment. With this backdrop in mind, we believe the Legislature could not have intended the broad range of circumstances the hospitals' view of "appeal" entails, in which a base component of the Medicaid formula for three years hence would be subject to great jeopardy of upward revision.

3. *Conclusion.* In summary, we declare that the word "appeal" is a "general or descriptive term which may have varying meanings according to the circumstances in which it is used." *Oxford* v. *Oxford Water Co.*, 391 Mass. 581, 587 n.4

(1984). That is especially so in the context of commission action, in which two distinct processes exist for questioning rates: (1) an appeal process set up by the statute itself, and (2) the declaratory judgment vehicle for a generalized class action attack. Understanding the intent of the Legislature (the cause of statute's enactment, the imperfection it desires to remedy, and the main object it seeks to accomplish) is the most important factor in construing the meaning of "appeal" — far more important than a literal dictionary meaning. *Id.* We are convinced that only the construction of "appeal" we adopt is harmonious with the legislative intent of St. 1982, c. 372. We therefore remand the cases to the Supreme Judicial Court for the county of Suffolk, where a judgment shall be entered declaring that the Medicaid reimbursement rate for fiscal years 1983 through 1985 may be computed by using the $70 per AND rate, except where individual hospitals have contested that rate by appeal under G. L. c. 6A, § 36.

*So ordered.*